[Criminal No. 890.   Filed June 6, 1940.]

[103 Pac. (2d)  459.]

RAYMUNDO RAMIREZ, Appellant, v. THE STATE OF ARIZONA, Respondent.

Messrs. Rogge & Kingsbury, for Appellant.

Mr. Joe Conway, Attorney General, Mr. Albert M. Garcia, Assistant Attorney General, and Mr. Bryant W. Jones, County Attorney, for Respondent.

McALISTER, J.—Appellant was convicted of an assault with intent to commit rape and from the judgment, as well as from the orders denying his motion for a new trial and refusing to arrest the judgment, he appeals.

Before entering his plea, the defendant moved to quash the information upon the ground that he had not been legally committed, for the reason that the evidence introduced by the state at the preliminary hearing did not show the commission of the offense of assault with intent to commit rape or in

fact establish any reasonable or probable cause for holding him on that charge. The denial of this motion is the first error assigned. It is sufficient to say of this contention that it is, under the great weight of authority, untenable. "A statute authorizing the setting aside of an information on the ground that defendant has not been legally committed by a magistrate," to use the language of 31 C. J. 804, paragraph 379, "does not authorize the information to be set aside on the ground of insufficiency of the evidence on a preliminary examination before the magistrate." Our statute on this question, section 5005, Revised Code of 1928, second paragraph, is identical with that of California and was evidently copied from it, and in *People* v. *Beach,* 122 Cal. 37, 54 Pac. 369, the court construed this section and its holding is summarized in this brief statement in the syllabus: "An information cannot be set aside on the ground that defendant has not been 'legally committed,' in that there was not evidence before the magistrate to show an offense, where evidence was heard by the magistrate." See, also, *People* v. *Creeks,* 170 Cal. 368, 149 Pac. 821.

In the second assignment complaint is made of the order overruling the demurrer to the information, the charging part of which reads as follows:

"The said Raymundo Ramirez on or about the 21st day of August, 1939, and before the filing of this information, at the County of Greenlee, State of Arizona, did then and there willfully, unlawfully, feloniously and violently, commit an assault in and upon the person of another, to wit, Helen Latvala, a female, not the wife of him, the said Raymundo Ramirez, by then and there forcibly and with violence assaulting and attempting, with intent to rape her, the said Helen Latvala, to have and commit the act of sexual intercourse with her, the said Helen Latvala, and that the said Raymundo Ramirez was then and there an adult male person."

■■ The first two objections to this information are that it does not conform to the requirements of the statute as to definiteness and certainty and that the facts stated by it do not constitute a public offense. The information is a copy of that in *Uren* v. *State,* 27 Ariz. 491, 232 Pac. 398, which this court said sufficiently alleges the offense of assault with intent to commit rape. The term "assault" includes by implication some overt act of physical violence upon the person of another, and the rule as to definiteness and certainty does not require that the specific acts constituting the assault be alleged in an information charging an assault with intent to commit rape any more than it does in an information charging an aggravated assault, an assault with a deadly weapon or an assault with intent to murder. *High* v. *Territory,* 12 Ariz. 146, 100 Pac. 448; *Moore* v. *State, ante,* p. 43, 97 Pac. (2d) 925; *State* v. *Smith,* 80 Mo. 516. Since the charge that the defendant committed an assault upon Helen Latvala implies necessarily the commission of an act of personal violence in furtherance of the intent to rape, the information, under the cases cited, is subject to neither of the objections urged against it.

■ It is further contended that if the information states an offense at all, it states two, namely, an attempt to rape under section 4896, Revised Code of 1928, the general attempt statute, and an assault with intent to commit rape as defined by section 4594, Id. This contention is based upon the word "attempting." It is clear from a reading of the information that, as here used, the pleader intended this word to carry the same meaning as the term "assaulting" appearing in connection with it, and that both were employed to convey the idea that the defendant committed some act of violence upon the person of Helen Latvala in furtherance of his intent to rape her. The offense, at-

tempt to rape, as distinguished from an assault with an intent to commit rape, exists under the statute but it is plain that the word ''attempting'' was employed here merely to strengthen the idea conveyed by the word ''assaulting'' upon the theory advanced by the authorities and as generally understood that ''every assault with intent to rape is an attempt.'' 52 C. J. 1027, par. 36. However, the expression in which both ''assaulting'' and ''attempting'' appear, namely, ''by then and there forcibly and with violence assaulting and attempting,'' was unnecessary and should have been omitted, and the same is true of one of the expressions, ''to rape her, the said Helen Latvala'' and ''to have and commit the act of sexual intercourse with her, the said Helen Latvala.'' These express the same idea in different language and one of them would have been sufficient. The crime with which the defendant was accused would have been sufficiently alleged had the charging portion of the information read: ''did then and there, willfully, unlawfully, feloniously and violently commit an assault in and upon the person of another, to wit, Helen Latvala, a female, not then the wife of him, the said Raymundo Ramirez, with the intent to rape her, the said Helen Latvala.'' This suggestion is made merely because the information in the Uren case, which was held good and served as a guide in this case, will probably, as a matter of safety, notwithstanding its useless verbiage, continue to be followed by county attorneys in drawing informations for the offense of assault with intent to commit rape, unless their intention is directed to its use of unnecessary language. The allegation that the defendant was an adult male person was indispensable if the prosecutor intended to ask for a conviction for an aggravated assault as an included offense upon the ground that the person assaulted was a female. *Uren* v. *State, supra.*

■ The denial of defendant's motion for a directed verdict as to the charge of assault with intent to commit rape made at the close of the state's case upon the ground that the evidence introduced by it failed to prove the essential elements of that offense is assigned as error. The correctness of this ruling depends upon the evidence which was substantially as follows: The prosecuting witness, Helen Latvala, a young woman twenty-one years of age, testified that she was living alone in apartment No. 6 of the Teachers' Court in Morenci, Arizona, and at 3 o'clock on the morning of August 21, 1939, while she was in bed asleep the defendant entered her room, grabbed her by the throat and held her so tight that she could do nothing, not even talk; that he stood at the head of her bed and when she awoke made this statement to her: "Gonna throw a fuck into you"; that he did not say, "I'm going to " but just "gonna"; that after telling her this, he loosened his grip somewhat and kissed her but still held her with one hand; that when he slackened his hold sufficiently she screamed, and he immediately choked her again more severely; that after a short time he again loosened his grip slightly and she gave another scream, whereupon he ran out the door; that she did all she could to resist him but could not even scream until he released somewhat his grip on her throat.

Three persons who lived in the court, Mr. and Mrs. Jack Cocks and L. B. Mitchell, heard the screams of the prosecuting witness and reached her apartment within just a few minutes after her assailant had left her room, testified that when they got there she was very much upset, crying, bleeding from the mouth and carrying finger prints or other marks or bruises on her throat under her ears.

In addition, the evidence discloses that the defendant admitted on the afternoon of August 21st to the

sheriff and his deputy, and on September 29, 1939, to the justice of the peace before whom he had been taken for a preliminary hearing, that he was guilty of the offense charged. In reply to the question by the sheriff as to why he had done it, he said that he did not know, that he was drunk.

According to the testimony of the prosecuting witness the defendant made no effort to remove any of his clothing or get on the bed, and due largely to this fact he contends that the evidence does not show that he intended to commit the crime of assault with intent to commit rape and that a verdict should have been directed for him as to that offense. The court was clearly correct in denying the motion, for there can be no question of the sufficiency of the evidence to support the verdict. When a man goes into a room where a woman is sleeping alone at 3 o'clock in the morning and grabs her tight by the throat and tells her by the only words he speaks what his purpose there is, it would be difficult for one to entertain any other thought or belief than that he went there intending to commit upon her the crime of rape. That her screams frightened him and caused him to leave the room without accomplishing his purpose, or going still further in the attempt, does not disprove the fact that he entered the apartment intending to rape the prosecutrix.

The evidence discloses that the witness, Mitchell, ran after and caught the defendant as he left the apartment and that they fought for some minutes, the defendant finally getting away. The witness Jack Cocks who heard the screams of the prosecutrix and saw the finger prints and bruises on her throat did not rest the balance of the night but took a position about fifty feet from the corner near the court and watched until 5:30 in the morning when he saw defendant about one hundred feet away and called to

him to stop. Instead of doing so he ran and the witness Cocks, advancing towards him, called again and shot a pistol in the air but the defendant continued running until he reached the house some distance away where he was arrested a few minutes later. Mitchell heard Cocks calling defendant and ran where he was and then after the defendant. The introduction of this evidence was objected to upon the ground, among others, that there was nothing showing that defendant fled to avoid arrest or imprisonment for the crime charged. Whether introduced as evidence of flight or not his action in this respect was a circumstance the jury had a right to consider and its introduction could not have been error, prejudicial or otherwise. "The whereabouts of accused, and his comings and goings, subsequent to the commission of an offense and up to the time of his arrest," says 16 C. J. 551, paragraph 1062, "are admissible; and where evidence of this character is introduced by the state, defendant has a right to rebut it."

The last assignment is that the court erred in admitting the testimony of the justice of the peace, the sheriff and one of his deputies as to an alleged confession by defendant, for the reason that no proper foundation for the introduction of such evidence had then been laid. When this evidence was offered the defendant's counsel objected to it upon the ground that it had not been ascertained by the court in the absence of the jury that the statement was voluntary. His position was that the court should ascertain this when the jury was not present and that in determining the matter he should have been allowed to testify regarding it. His counsel asked the privilege of putting the defendant on the witness stand to show that his statement to these witnesses was not voluntary but induced by the promise or hope of a light sentence. The court declined to hear the defendant or other wit-

nesses in the absence of the jury regarding the voluntary character of the statement but admitted the testimony of each witness upon the showing before the jury that no threat was made or reward of any kind held out to the defendant to induce him to make the statement but that it was entirely voluntary. There was no error in the court's refusal to hear evidence as to the voluntary character of the confession in the absence of the jury, because under the holdings of this court the final decision of that question may be left to that body. While the court should, before permitting a confession to go to the jury, determine that it was voluntary, yet we have held several times that it is not error to leave the ultimate determination of the question to the jury. The court may do this even after deciding, preliminary to its introduction, that it is voluntary. *Indian Fred* v. *State,* 36 Ariz. 48, 282 Pac. 930; *Kermeen* v. *State,* 17 Ariz. 263, 151 Pac. 738; *Hernandez* v. *State,* 43 Ariz. 442, 32 Pac. (2d) 25. In most jurisdictions, where there is a conflict in the evidence on the question and the court is not entirely satisfied that it is voluntary, it is submitted to the jury under instructions to disregard it if upon all the evidence they believe it to be involuntary. *Wilson* v. *United States,* 162 U. S. 613, 16 Sup. Ct. 895, 40 L. Ed. 1090; 16 C. J. 927, and notes.

The judgment is affirmed.

ROSS, C. J., and LOCKWOOD, J., concur.