STATE *vs.* EDWARD J. ANDREWS.

AUGUST 16, 1957.

PRESENT: Flynn, C. J., Condon, Roberts, Andrews and Paolino, JJ.

ANDREWS, J. This is an indictment for murder in three counts. The first count charges that the defendant murdered Susan B. Franklin while perpetrating rape upon her. The second count charges that the defendant murdered her while attempting to perpetrate rape upon her, and the third count charges that the defendant murdered her by choking and strangling her.

To avoid possible local prejudice the case was transferred from Newport to Providence for trial. The jury found defendant guilty of murder in the second degree, and the trial

justice denied his motion for a new trial. The defendant excepted to this denial and this exception together with forty-four others constitute his bill of exceptions. He has, however, waived all but exceptions 8, 9, 10, 11, 12, 17, 24, 25, 37, 38, 40, 41 and 44. The defendant has briefed these exceptions under certain points and as the state has adopted the same treatment we shall do likewise.

Susan B. Franklin, a retired school teacher who was unmarried, was eighty-six years old at the time of her death, weighed eighty-five to ninety pounds and lived alone at 36 Walnut street in the city of Newport. About 1:30 p.m. on Sunday, April 24, 1955 a neighbor, Mary H. Peckham, who cooked Miss Franklin's dinners, took her dinner over to her. She found the door open and when Miss Franklin did not respond to her call she went into her bedroom and found her lying on the bed, dead. The police were called and took charge of the investigation.

Doctor Frank J. Logler, a local physician, came to the house about 1:30 to 2 p.m. that day. He examined the victim and estimated that she had been dead eight to twelve hours, but on cross-examination said she could have been dead anywhere from four to twenty-four hours. About 8:30 p.m. Dr. Arthur E. O'Dea, chief medical examiner for the state, performed an autopsy. He found bruises and abrasions on the body, a tearing of the vaginal wall and the presence of male spermatozoa in her vagina. He concluded that she had died as a result of asphyxia (shutting off of oxygen because of the presence of blood in the windpipe or the bronchi) following blunt injury to the face and forceful penetration of the vagina.

A Newport police officer, George A. Von Villas, who had locked defendant up the previous Friday night, at the request of his family, for being somewhat drunk and disorderly at the home of his mother where he lived, picked him up again at 8:17 p.m. Sunday on suspicion that he might have had something to do with the murder. He questioned

defendant concerning Miss Franklin but he denied knowing anything about the matter. Other officers questioned defendant from time to time during the night but he denied having anything to do with the crime. However, about 10 a.m. Monday, April 25, after one of his associates had said that he, defendant, had stated that he knew where he could get $500 or $600, he confessed that he entered Miss Franklin's house, assaulted her, had sexual intercourse with her, tied her up, and put a pillow over her head to keep her quiet. Before the confession was reduced to writing, certain police officers took defendant to Miss Franklin's house where, in the presence of Dr. Harold C. Harrison, assistant director of the University of Rhode Island laboratories of scientific criminal investigations, he re-enacted the crime as he had orally confessed it. The confession was also taken by tape recording, and it was signed and sworn to by defendant.

The defendant, at the request of the police, gave them some of his pubic hairs and Dr. Harrison testified that he compared them with other hairs which he obtained from a pair of shorts and a red shirt which were taken from defendant's bedroom, and which defendant admitted had been worn by him, and also from the bed in which Miss Franklin was assaulted, and that they originated from the same source. The doctor also testified that a white hair which was taken from the red shirt of defendant had come from the head of Miss Franklin. Fingerprints of defendant were found on an electric light bulb in Miss Franklin's house.

At the trial defendant denied that he killed Miss Franklin or that he entered her house, although he admitted that he was near it in his walks around the neighborhood between nine and ten o'clock Saturday evening, April 23. His mother, two sisters and a brother-in-law testified in support of his alibi, but one of them stated she left the house at eight o'clock and the other three testified that defendant was out of the house from a little after nine to shortly after

ten o'clock that night. The defendant lived two or three blocks from Miss Franklin's house. He admitted that he had consumed a bottle of wine that morning and had had more to drink during the day, and felt "high." He also admitted to some resentment on Saturday at having been locked up Friday night.

The defendant also offered medical evidence as to his mental condition. His expert testified that he was suffering from inadequate personality, was emotionally immature, and was easily influenced by suggestions. He also testified that he would say that defendant did not know the difference between right and wrong. In rebuttal the state's expert on mental diseases testified in substantial contradiction of defendant's medical expert.

Under his point I defendant argues the part of his motion for a new trial which reads: "That the verdict is against the law." To support his claim he relies upon *State* v. *Saccoccio*, 50 R. I. 356, where this court overruled the defendant's exception to the trial court's refusal to submit second degree murder to the jury under an indictment charging the defendant, as here, with first degree murder committed while he was perpetrating one of the felonies mentioned in general laws 1938, chapter 606, §1.

In the case at bar the trial justice charged that the jury could find defendant guilty of first degree murder *or* of second degree murder on all counts. While defendant claims he excepted to the submission of second degree murder, he did not. His trial counsel only said: "Those portions of Your Honor's charge where defining second degree murder you stated several times 'where he has no chance to stop or things move so fast that it would be murder in the second degree.'" That was an exception as to how the court charged and not to its charging at all on second degree murder. Nowhere in his brief has defendant argued his exception as taken. However that may be the correctness of the charge was not before the trial justice for review on the

motion for a new trial. The defendant is here complaining that the jury *followed* the law as given to it and found him guilty of murder in the second degree. This point is without merit.

Under his point II defendant contends that the trial justice should not have charged on the law of second degree murder "by defining second degree murder." We have already pointed out that defendant did not object to the submission of second degree murder but only to a part of its definition and that he has not argued here that such part was wrong. Exceptions not briefed or argued are deemed to be waived. Exception 40 is overruled.

The defendant contends, under his point III, that the trial justice committed reversible error in not granting his motion for a new trial on the ground of newly discovered evidence. Under this point he first discusses certain evidence introduced at the trial in an apparent attempt to lay the foundation for showing the effect of the newly discovered evidence upon it. There is so little connection between the evidence at the trial and the new evidence that we think it unnecessary to go into that phase here.

Several affidavits were presented. The defendant admits that those of his relatives should be disregarded. That leaves three to be considered. The first affidavit is that of Charles F. McHugh, a probation counsellor for the state. It is all hearsay and avails defendant nothing. *Langley* v. *F. W. Woolworth Co.*, 46 R. I. 394, 397. No explanation is given as to why the affidavits of the persons who could testify were not taken. This affidavit relates chiefly to a navy man who, a barkeeper told him, was acting strangely in the barroom on Saturday night, April 23, but the exact movements of that man on that night are not given. Taking the affidavit at its face value, it is very shadowy and inconclusive.

The second affidavit is that of a bus driver who said that there was a street light shining on the door of Miss Frank-

lin's house and there were no sounds or screams coming from the house at approximately 8:35 p.m. on April 23. Clearly this evidence is without weight. The defendant testified he took his walk in that vicinity between nine and ten o'clock that night.

The other affidavit is that of a person who stated that on Sunday, April 24, between 10 and 10:30 a.m. he was passing Miss Franklin's house and there was a car parked near her front steps and a man standing on the steps knocking at the door. He said the man waited a short time and then drove off. He described the person somewhat but there is nothing to show whom he describes, and the significance of this evidence is far from clear.

In *State* v. *De Cesare*, 64 R. I. 123, this court stated at page 126: "* * * the affidavits of the four persons, upon whose testimony the petition is based, do not disclose evidence of such character as to be so controlling upon a material issue that it would probably change the result, if another trial were had."

The new evidence does not meet the test, and the trial justice did not abuse his discretion in denying the motion for a new trial on this point.

Under his point IV defendant argues his exception 37 which was to that part of the charge dealing with reasonable doubt. After discussing the presumption of innocence and the difference between civil and criminal cases the trial justice stated: "This is a criminal case and in a criminal case the defendant should be found guilty only if the state has proved to you beyond a reasonable doubt that he is guilty. You mustn't have left any doubt that is reasonable. It doesn't mean that it should be proved beyond any doubt. It does mean that you should have no reasonable doubt left."

The defendant's trial counsel in stating his objection said: "To that portion of Your Honor's charge wherein defining reasonable doubt you laid down the test of ordinary affairs

of everyday life, particularly where you said, 'It's impor-
tant for you to decide if something happened and you're
told it happened; it was important to you as to whether
it happened, or not, you say yes, you are convinced that it
happened. Then you have been convinced beyond a rea-
sonable doubt.'" The defendant's counsel on appeal, how-
ever, emphasizes the trial justice's use of the word "some"
before importance later on in this part of his charge.

In the above quotation the trial justice gave an accurate
and adequate charge on this subject and had he stopped
there we would have no problem. He did, however, as some
trial judges do, try to assist the jury by attempting to de-
fine what the phrase, "beyond a reasonable doubt," means
by equating it with decisions in their own experience. We
agree with those courts which hold that the phrase needs
no definition and that attempts to define it sometimes con-
fuse the jury. We do not think, however, that in the case
at bar the jury was confused or that the rule in the quota-
tion was watered down as defendant attempts to show.

The defendant relies strongly upon *Commonwealth* v.
*Kluska,* 333 Pa. 65. However, we are of the opinion that
the challenged charge satisfied the rule of the *Kluska* case.
While it is true that the trial justice used the word "some"
before the word "importance" in the middle of this part of
his charge, he used the word "important" without qualifi-
cation both before and afterwards. Therefore, reading this
part of the charge as a whole, we are satisfied that the jury
could not have failed to understand that they were to equate
their verdict with their decisions on *important* affairs in
their own lives. This court has never made a ritual out
of jury instructions and has thus avoided a line of decisions
such as confronted the supreme court of Pennsylvania in
the *Kluska* case. We think that simple charges within the
comprehension of the ordinary juror are more appropriate,
and when it appears that the jury is given the substance
of the proper rule in such form we do not reverse for inar-

tistic language unless we are convinced that the jury may have been misled thereby.

A similar situation was presented in *State* v. *Mandella*, 79 R. I. 476. Furthermore, as is shown by the language of the trial attorney in taking this exception, the attention of the trial justice was not directed to the use of the word "some" and we cannot emphasize too strongly the duty of counsel to direct the attention of the trial justice to the part of his charge to which the counsel excepts so that the trial justice may have an opportunity to correct it. Exception 37 is overruled.

Under his point V defendant discusses his exceptions 8, 9, 10, 11 and 12 which have to do with the testimony of Dr. Harrison as to the identity of the hairs of defendant and the victim which the doctor had examined. Without discussing the specific exceptions defendant argues that the court should not have allowed Dr. Harrison to give his opinion on this matter. The defendant relies upon *Knoll* v. *State*, 55 Wis. 249, where the court sustained an exception to a ruling allowing a witness to give an opinion on the ownership of hairs. It is clear from the defendant's own quotation from that case that the court sustained the exception, because the witness based his opinion "* * * not from any scientific tests, or peculiarities in the structure of the hair which an examination by a microscope would disclose, but from the length, magnitude and color, or those obvious marks and resemblances which one person of good vision would observe as readily as another." Doctor Harrison who had studied this subject for many years gave his opinion, as defendant says, "by microscopic comparison" of the hairs in question. This was something he was better able to do than a jury.

A hundred years ago in *Buffum* v. *Harris*, 5 R. I. 243, 251, Chief Justice Ames laid down the law which we believe has been uniformly followed here as to the use and the qualification of experts to assist the jury. The trial justice has

rather wide discretion as to whether the subject matter admits of expert testimony. See 20 Am. Jur., Evidence, §798, p. 671.

In *Commonwealth* v. *Dorsey*, 103 Mass. 412, a nonexpert testified there were hairs adhered to a club which appeared to the naked eye to be human hair and another non-expert testified they resembled the hair of the deceased. The defendant's exceptions were overruled. The defendant admits that this case is an authority against him.

Exceptions 8, 9, 10, 11 and 12 are overruled.

Under his point VI defendant argues that the trial justice did not give the proper definition of insanity. This is exception 38. In taking the exception to the definition his trial attorney said: "Merely for the record, and I feel Your Honor had no alternative, by defining insanity under the M'Naghten Rule. I want to preserve that right." It is clear from this statement that the trial attorney was satisfied that the trial justice stated the M'Naghten Rule correctly but he wanted to preserve defendant's right to argue that it was not the proper rule. The defendant's attorney on appeal attacks the correctness of the instruction under that rule. He argues that the trial justice did not follow the exact language of Lord Chief Justice Tindal's restatement of the rule. We have examined the charge and are satisfied that it contains a substantial statement of the M'Naghten Rule. Had defendant felt it was in any way unclear or ambiguous, he should have pointed out that ambiguity or unclearness to the trial justice in order that he might have an opportunity to correct it.

In *Cassidy* v. *McDonald*, 47 R. I. 147, this court, speaking through Chief Justice Sweetland, stated at page 149: "The rule is well established, and it is a valuable rule of practical application in the circumstances surrounding jury trials, that the omission by a judge presiding at a jury trial to charge upon some issue in a case, or his failure to define an essential legal term is not ground for exception. An ex-

ception can only be based upon the action which the justice takes upon a request for instructions covering an alleged omission." Had the defendant's attorney wished to challenge the M'Naghten Rule he should have submitted a request for instruction stating a different rule. This he did not do.

While this jurisdiction has never expressly adopted the M'Naghten Rule, it has assumed that it was the law here when in *State* v. *McGregor*, 82 R. I. 437, the court stated at page 449: "The charge of the court had adopted the rule or test as to a defendant's alleged insanity which is applied generally and which is referred to in *State* v. *Quigley*, 26 R. I. 263." In the *Quigley* case the court referred to the M'Naghten Rule but as it was not required to rule on it, it did not expressly do so. The defendant's trial attorney in the case at bar assumed the M'Naghten Rule was law here and we have likewise assumed it is the proper rule. The rule of responsibility when a defendant has the capacity to know the difference between right and wrong seems to us a sound rule and one particularly adapted to the administration of criminal justice.

The defendant also excepted to the statement of the trial justice in his charge that the evidence of insanity was slight. He qualified this by saying "slight in point of number of words involved." This evidence was in fact very slight and we are of the opinion that the qualification cured any possible prejudice from the first remark. Exception 41 is overruled.

Under his point VII, exceptions 17, 24 and 25, defendant attacks the admissibility of his written confession and the confession taken by tape recording. He relies upon *McNabb* v. *United States*, 318 U. S. 332, *United States* v. *Mitchell*, 322 U. S. 65, and G. L. 1938, chap. 625, §68, as amended by P. L. 1941, chap. 982, section 1, which reads in part as follows: "Clause 11. *Length of Detention.* Every person arrested shall be released either on bail or as provided

in clause 10 or shall be brought before a judge of the district court within twenty-four hours from the time of his arrest, unless a judge of the district court of the district where he is detained or of the district court of the district where the crime was committed for good cause shown orders that he be held for a further period of not exceeding (a) twenty-four hours, if he be a resident of this state or (b) forty-eight hours, if he be a non-resident."

The United States Supreme Court said in both cases that it was exercising its supervisory power over the administration of criminal justice in the federal courts. Such being the case those decisions do not bind us. In the *McNabb* case the court was of the opinion that the officers had flagrantly disregarded the federal statutes requiring prompt arraignment and this fact together with other facts satisfied the court that the confession was not voluntary. In the *Mitchell* case the defendant confessed soon after he was arrested although he was not arraigned for eight days, yet the court held that his confession was admissible.

In the instant case defendant in his brief admits that the basic question is "* * * admissibility or non-admissibility of a confession must rest ultimately on its voluntariness * * *." We think that is the correct rule. The defendant also admits that the majority state rule is to the effect that mere delay in arraignment does not vitiate a confession. In the case at bar the confessions were obtained within the statutory twenty-four hour limit and there was no substantial evidence before the trial justice that there was any force or compulsion or improper influence brought to bear upon defendant that would make his confession involuntary. Such being the case the trial justice did not commit error in admitting the confessions. We are not concerned here with the weight to be attached to these confessions or to the effect of the defense testimony regarding them but only with their original admissibility.

Exceptions 17, 24 and 25 are overruled.

354

The defendant's point VIII, which is his last point, exception 44, is stated by him as follows: "The defendant's motion for a new trial should be granted on the ground that the verdict was against the evidence and against the weight of the evidence." In support of the above proposition he refers us to his trial attorney's oral argument before the trial justice on his motion for a new trial. He admits that we cannot overturn the decision of the trial justice on that motion unless he was clearly wrong. He should, therefore, have pointed out to us where the trial justice, not the jury, was wrong and his failure so to do would ordinarily result in his exception not being considered. However, in the circumstances here we shall consider it.

The defendant's trial attorney pointed out to the trial justice, as he did to the jury, what he claimed were the weaknesses in the state's case and the strength in his own case but, as the record shows, he failed to convince the jury or the trial justice that these points overcame the strong points in the state's case. It is clear that the confessions were the main part of the state's case but the trial justice was satisfied with them. He particularly remarked upon the recorded one from which he and the jury heard the voices of the various participants. He was particularly impressed by the re-enactment of the crime in the presence of Dr. Harrison as to whose credibility there was not the slightest impeachment. He also stated that there was no impeachment of the police witnesses. He characterized the confessions as ringing true and, having heard the witnesses, he was in a position to make such a statement, and we are of the opinion that there is nothing suspicious or unnatural about the confessions.

The defendant's defense of insanity was woefully weak. It is doubtless true that his background and some of his weaknesses of character may have played a part in the crime. Those facts, however, did not warrant an acquittal.

The defense of alibi was also very weak because, as we

have noted, he admits to being in the neighborhood between nine and ten o'clock Saturday evening. The fact that Miss Franklin was dressed and the light was on, coupled with the medical testimony, indicate that the murder was committed Saturday evening. We have already noted the real evidence, the hairs and the fingerprints.

The attack is against "the verdict." As the motion was general if there was sufficient evidence to support any count, the motion could be properly overruled. On this motion the defendant was limited to an attempt to show that the verdict was against the weight of the evidence as applied to the *charge as given* on second degree murder. The following is an excerpt from the charge on this point: "Now he's committed the murder because he had malice aforethought, that evil intent was in his mind before he acted. Then he acted on it; he [would be] guilty of murder but he'd be guilty of murder in the second degree because there hadn't been, as the Supreme Court said, there hadn't been an appreciable length of time in which he had a chance to turn back. So that in each one of these counts you'll ask, was the defendant guilty of murder within the definition I have given to you." This was the law of the case and upon all the evidence the jury might well have concluded that the defendant became so infuriated at Miss Franklin's resistance that his actions came within the above definition.

Miss Franklin died of asphyxia caused by blood in the windpipe which came from flesh wounds in her mouth received by some blunt force. In describing the blunt injury the medical examiner said: "This would be a blunt thing such as striking the pavement or floor, a blow of the face, a blow of some object which does not cut or particularly penetrate the skin." From this the jury could well have concluded that asphyxia was the result of the blow to the mouth and not from the rape or attempted rape. There was, therefore, ample evidence at least to support the ver-

dict of second degree murder on the third count. Since that verdict must stand, it would be of no benefit to defendant to grant him a new trial on the other two counts. In fact he might conceivably be convicted of first degree murder on these counts.

The defendant's attorney argued to the trial justice on his motion for a new trial that the verdict was a compromise. As the verdict which we have just considered was at least in accordance with the law of the case and warranted by the evidence, the trial justice could hardly have treated it as a compromise. He said among other things in disposing of this argument: "* * * I told the Jury that they must decide whether this was first or second degree murder and having told them that and that issue having been put to them, one can't impeach their judgment too much if they take the Court at its word as to what they can find. The third count was an ordinary common-law murder count and certainly would be susceptible of being broken down into a second degree murder count. It is my impression that the same is true of the first and third."

Finally, in the absence of objection to the submission of second degree murder, defendant was not prejudiced by a verdict on this degree when the evidence amply warranted a verdict of first degree murder. Had he excepted to the submission of second degree murder, he would be in a legal position to argue prejudice but it appears that even then most courts would rule against him. That point, however, we do not decide here. Here again the trial justice said he himself considered the defendant guilty of first degree murder. We are satisfied that he fully performed his duty in regard to the motion for a new trial and that he was not clearly wrong in denying it. Exception 44 is overruled.

All of the defendant's exceptions are overruled, and the case is remitted to the superior court.

FLYNN, C. J., did not participate in the decision.

*William E. Powers,* Attorney General, *Raymond J. Pettine,* Assistant Attorney General, for State.

*John Quattrocchi, Jr.,* for defendant.