STATE *vs.* CHESTER G. JEFFERDS.

JUNE 19, 1959.

PRESENT: Condon, C. J., Roberts, Paolino and Frost, JJ.

ROBERTS, J. This is an indictment charging the defendant with the murder of his wife on July 9, 1952. After a trial in the superior court the defendant was convicted of murder in the first degree. His motion for a new trial was denied. The case is before us on the defendant's exceptions to the denial of his motion for a new trial, to certain evidentiary rulings, and to the charge of the trial justice.

The exception first urged by defendant is that pertaining to the denial of his motion for a new trial. He contends primarily that the verdict was against the weight of the evidence. The decision of the trial justice denying the said motion is contained in a rescript. It is not contended that

he did not properly exercise his function in considering the motion for a new trial, and it is clear from an examination of the rescript that his duty in this respect was properly performed.

It appears from the evidence that defendant and his wife had been married in 1941. Late in 1951 they separated, and on November 7 of that year she filed a petition for divorce on the ground of neglect to provide. During the pendency of her petition, which was not contested, she resumed her maiden name, Eleanor Erminelli. At the time of her death an interlocutory decree was in effect which granted the petition, but no final decree had been entered.

The evidence presented by the state tended to establish the following circumstances relative to Eleanor Erminelli's death. On July 9, 1952 at approximately 6:30 p.m. a gray coupe was involved in an accident in Park Place in the city of Pawtucket. Immediately prior to the accident two people were seen in the automobile. When the first witnesses arrived at the scene of the accident, defendant, bleeding profusely from the nose, was getting out of the automobile and Eleanor Erminelli was slumped over the wheel. It was subsequently determined that both had been shot. A .22 caliber rifle which appeared to have been recently fired was found on the floor between the two front seats of the automobile. Eleanor Erminelli died of gunshot wounds through the back of the head. The defendant was hospitalized for over a week as a result of a gunshot wound through the nose.

On July 8, the day before the automobile accident in Pawtucket, defendant, who lived at the Y. M. C. A. in the city of Providence, had driven to the home of a friend, Lawrence R. Andre, in West Kingston in this state. At that time Andre returned to defendant a .22 caliber rifle which he had borrowed from him sometime previously. There was testimony that when Andre gave the rifle to defendant on July 8, it was not loaded. The defendant placed the

rifle on the back shelf of the automobile which he was driving and covered it with a blanket. This automobile, which was owned by Eleanor Erminelli, was the same automobile in which she and defendant were found the next day.

Eleanor Erminelli was employed as a nurse at the South County Hospital in the town of South Kingstown, Rhode Island. Late in the afternoon on July 9, 1952, after she had completed her day's work at the hospital, she was met by defendant who was driving her automobile. Approximately one hour later this same automobile with a woman driving stopped in front of the Y. M. C. A. in Providence and defendant got out of the car and entered the building. This was before 6 p.m.

Expert testimony was presented to the effect that metallic fragments found in the body of Eleanor Erminelli were derived from bullets fired from the rifle found in the automobile at the time of the accident. Police investigation of defendant's room in the Y. M. C. A. revealed the presence in a drawer of several .22 caliber bullets, and there was evidence that these bullets were similar to those whose fragments had been identified in the deceased's body.

At the time of his arraignment in the superior court defendant had pleaded not guilty by reason of insufficient mental capacity. In support of this plea he presented evidence tending to establish a history of epilepsy. The defense sought to show that he had suffered an epileptic seizure at the time of the alleged offense.

The defendant testified on his own behalf with respect to the events leading up to the automobile accident in Pawtucket. His testimony generally corroborated the evidence presented by the state. As to the commission of the alleged offense, defendant testified that he had no recollection of the circumstances immediately preceding and following his presence in Park Place. He stated his last recollection was that he was seated in the automobile with his wife on the way to the city of Pawtucket. He also testi-

fied with respect to his alleged history of epileptic seizures and treatments therefor. In rebuttal the state presented evidence which tended to contradict certain of the testimony given by defendant.

We are unable to perceive any error in the trial justice's denial of the motion for a new trial. The defendant has emphasized several alleged inconsistencies in the evidence presented by the state and has challenged as remote certain of the inferences which the state sought to draw from circumstantial evidence. It is our opinion that, even disregarding the evidence which defendant argues to be inconsistent and remote, there is nevertheless a sufficient basis therein for the finding of guilt. The defendant's exception numbered 13 is overruled.

The defendant's exceptions numbered 1, 2, 3, 4, and 5 relate to certain rulings upon evidence by the trial justice. We have examined each of the exceptions and find them to be without merit. We do not discuss specifically herein any of the rulings, since we are of the opinion that in no instance could defendant have been prejudiced by any error which may have been committed. All of these exceptions are overruled.

We would, however, direct attention to exceptions numbered 3 and 4. These were taken to the action of the trial justice in permitting an expert witness to state an opinion as to defendant's mental condition on the basis of testimony she had heard during the course of trial. Because of the peculiar form in which the question was asked we do not think the trial justice erred in admitting the answer. But it is our judgment that the admission of opinion evidence on such a basis could in some instances constitute prejudicial error.

The remaining exceptions are concerned with the trial justice's charge to the jury. These exceptions are based upon the following contentions: First, that there was error in the instructions as to reasonable doubt; second, that it

278

was erroneous to charge the jury with respect to murder in the first degree; and third, that the portion of the charge relating to the insanity defense was erroneous.

In discussing reasonable doubt during the course of his charge, the trial justice employed the following language to which defendant excepted: "* * * it must be a doubt founded upon the evidence and predicated upon your conscience, if it was such a doubt as would deter you from entering into a business transaction of importance, then it is a reasonable doubt; if it does not reach those qualities or that state in your mind then the doubt is not reasonable * * *."

In *State* v. *Andrews*, 86 R. I. 341, 134 A.2d 425, we stated that the phrase "reasonable doubt" requires no definition by the trial justice. In that case, however, we noted at page 430 that "when it appears that the jury is given the substance of the proper rule * * * we do not reverse for inartistic language unless we are convinced that the jury may have been misled thereby." The above-quoted portion of the charge in this case constitutes an excerpt from a more extensive discussion of the subject of reasonable doubt. In our opinion the charge in this respect was substantially correct and sufficiently clear to prevent the jury from being confused or misled. The defendant's exception numbered 10 is overruled.

The defendant also took exception to the charge of the trial justice to the jury with respect to a finding of murder in the first degree. The short form indictment herein charges simply that defendant "did murder one Eleanor Erminelli." It is the argument of defendant that under this allegation he was put upon notice of a charge of second degree murder only. It is urged that in order to support a verdict of guilty of murder in the first degree, the indictment must contain more than the simple charge of "murder." With this contention we do not agree.

General laws 1956, §12-12-6, reads in part as follows:

"The indictment or complaint may charge, and is valid and sufficient if it charges, the offense for which the defendant is being prosecuted in one or more of the following ways:

(a) By using the name given to the offense by the common law or by a statute.

(b) By stating so much of the definition of the offense, either in terms of the common law or of the statute defining the offense or in terms of substantially the same meaning, as is sufficient to give the court and the defendant notice of what offense is intended to be charged."

Our statutory definition of murder is contained in G. L. 1956, §11-23-1, and reads:

"The unlawful killing of a human being with malice aforethought is murder. Every murder perpetrated by poison, lying in wait, or any other kind of wilful, deliberate, malicious and premeditated killing, or committed in the perpetration of, or attempt to perpetrate any arson, rape, burglary or robbery, or while resisting arrest by, or under arrest of, any state trooper or policeman in the performance of his duty; or perpetrated from a premeditated design, unlawfully and maliciously to effect the death of any human being other than him who is killed is murder in the first degree. Any other murder is murder in the second degree. The degree of murder may be charged in the indictment therefor, and the jury may find the degree of murder, whether the same be charged in the indictment or not, or may find the defendant guilty of a lesser offense than that charged in the indictment, in accordance with the provisions of §12-17-14."

It is our opinion that the indictment in the instant case in charging that defendant "did murder" invoked the statutory definition contained in the first sentence of §11-23-1 and that in so doing it gave adequate notice to defendant of the accusation of first degree murder against him. In *State* v. *Smith*, 56 R. I. 168, at page 177, the court stated: "Sections 7 and 10 of article I of our state constitution,

280

*supra,* substantially require that the defendants be notified by the indictment of the nature and cause of the accusation sufficiently to identify the crime and to prevent, in case of acquittal thereon, a subsequent prosecution for the same offense. The question therefore is narrowed to whether the form of indictment before us sufficiently meets these constitutional requirements."

It seems clear that by virtue of §12-12-6 the notice of the charge which must be afforded by the indictment need not be limited to the language used in the indictment itself. It is sufficient if the indictment employs technical language having reference to a crime whose definition can be obtained by resort to the common law or to a statute. *State* v. *Domanski,* 57 R. I. 500. If the meaning of the word "murder" used in the indictment in the case at bar can be determined from either a common-law definition or a specific statutory definition, then the requirement of notice has been fulfilled.

It is well settled that murder in this state is entirely statutory but the statute does not change the crime from what it was at common law. *State* v. *Hathaway,* 52 R. I. 492; *State* v. *Miller,* 52 R. I. 440; *State* v. *Fenik,* 45 R. I. 309. Consequently the term "murder" used in the indictment could only refer to the definition contained in §11-23-1. The defendant contends that the word "murder" standing alone refers only to what is now second degree murder. However, in our opinion the definition of the term "murder" used in the indictment embraces everything which is contained in the statutory section. The offense thus described includes each of the degrees prescribed by the statute. *State* v. *Fenik, supra.*

The defendant argues that the additional element of premeditation required for first degree murder extends the common-law definition, and consequently the simple use of the term "murder" limits the charge to the common-law definition which is now incorporated into the statute as second degree murder. The defendant relies upon *State* v.

*Domanski, supra,* where we sustained a similar short form indictment for robbery by reference to the common-law definition. The difficulty with this argument is that it overlooks the fact that §12-12-6 states that pleading may incorporate by reference *either* the common-law definition *or* the statutory definition. In the *Domanski* case this court was dealing with a common-law definition and it was thus necessary to limit the charge to the common-law elements. The indictment in the case at bar, however, invokes a statutory definition and properly includes therein everything contained in the statute. *People* v. *Mendez,* 27 Cal.2d 20.

The defendant also contends that the charge erroneously stated the law applicable to insanity as a defense in criminal cases. He argues that the language used by the trial justice did not accurately state the rule laid down by this court in *State* v. *Quigley,* 26 R. I. 263, and furthermore that the rule of the *Quigley* case, which is the M'Naghten Rule so called, should now be disapproved. In *State* v. *Andrews, supra,* we held that the application of the M'Naghten Rule could not be challenged where the defendant had not made specific requests for instructions. Since the defendant in this case made no request to charge with respect to insanity, we decline to consider his argument urging rejection of the M'Naghten Rule. The sole question is whether the charge in the instant case correctly stated the law on insanity as laid down in the *Quigley* case.

In instructing the jury with respect to insanity, the trial justice stated: " * * * pause, then say to yourself, 'Was he of sound mind at the time he did this act; did he know the nature and the quality of the act he was doing so he was morally responsible at the time he did it?' " Under the M'Naghten Rule as set forth in the *Quigley* case, criminal insanity consists of a person's inability "to know the nature and quality of the act he was doing or as not to know that what he was doing was wrong." *State* v. *Quigley, supra,* at page 270.

The defendant argues that it is incorrect to state the *Quigley* rule in terms of "moral responsibility" as the trial justice did in this case. In our opinion it is clear from the context of the charge that the trial justice's meaning of "moral responsibility" as used therein was essentially in accord with the law of the *Quigley* case. Whatever may be the definition in the abstract of terms used in a charge, that charge is sufficient if it conveys to the jury an understanding of the substance of the pertinent rules of law. It is our opinion that the charge on insanity in the instant case fulfills that requirement.

All of the defendant's exceptions are overruled, and the case is remitted to the superior court for further proceedings.

## MOTION FOR REARGUMENT.

### JULY 1, 1959.

PER CURIAM. After our opinion herein was filed, the defendant asked and received permission to file a motion for leave to reargue. Pursuant to this permission he has filed such a motion, setting out therein certain reasons on which he bases his contention that justice requires a reargument of the case.

Upon consideration we are of the opinion that the question raised under point 3 in his reasons in support of his motion for reargument raises an issue of sufficient importance to make it advisable to hear further arguments thereon. However, such arguments shall be limited to that point only.

As thus limited, the defendant's motion for leave to reargue is granted.

*J. Joseph Nugent,* Attorney General, *Edward F. J. Dwyer, Raymond J. Pettine,* Assistant Attorneys General, for State.

*Aram A. Arabian,* Public Defender, for defendant.