378 P.2d 751

**STATE of Arizona, Appellee,**

v.

**William H. WOOLERY, Appellant.**

No. 1197.

Supreme Court of Arizona,

En Banc.

Feb. 13, 1963.

Westover, Mansfield, Westover & Copple, and Douglas W. Keddie, Yuma, for appellant.

Robert W. Pickrell, Atty. Gen., Stirley Newell, Asst. Atty. Gen., Jeff Richards, County Atty. Yuma County, Bill Helm, former County Atty. Yuma County, for appellee.

JENNINGS, Justice.

Defendant, William H. Woolery, was charged with the murder of his fifteen-year-old step-daughter, Paula Dinnell. The pertinent facts are as follows: On July 24, 1960 defendant was at the home of Mrs. Ida Adelle Smith. Defendant's wife, Elizabeth Woolery, arrived at the Smith home in a taxicab at approximately 2:30 a. m. She asked for her husband and was told by Mrs. Smith that he was not there. She then returned home in the taxicab. As Mrs. Woolery was paying the taxicab driver, defendant arrived home in his automobile. Defendant pulled Mrs. Woolery from the taxicab and an argument ensued between them. The argument was continued in the living room inside the house. During the course of the argument defendant struck Mrs Woolery, went into their bedroom, returned with a pistol and then threatened to kill her with it.

Paula, the deceased, appeared in the doorway of the living room and told defendant to leave her mother alone. Defendant told her it was none of her business and then ordered her back to bed. He hit her in the face and kicked her as she was returning to bed. Paula then ran into her mother's bedroom saying she was going to call the

police. Defendant went in after her and said, "If you do I will shoot". A shot followed.

Mrs. Woolery thereupon entered the bedroom and found that Paula had been shot in the stomach. Paula was immediately taken to the hospital. She died during an emergency operation. Defendant was subsequently arrested and tried for murder. He was convicted of second degree murder and now appeals the judgment.

The first three assignments of error involve the charge upon which the defendant was tried. Defendant contends that the trial court erred in (1) allowing voir dire and challenges for cause on the death penalty; (2) submitting a verdict of first degree murder to the jury; and (3) in denying defendant's motion (made during voir dire examination of the jury) to quash the information insofar as it charged defendant with first degree murder.

The complaint upon which defendant was arrested charged:

"That one William H. Woolery on or about the 24th day of July, 1960, * * * committed a Felony, to-wit: Murder as follows, to-wit: That the said defendant, William H. Woolery, did wilfully, unlawfully, and feloniously and with malice aforethought kill and murder one Paula Dinnell, a human being."

A preliminary examination was held after which an order holding defendant to answer was entered. It provided:

"It appearing to me that the crime of Felony to-wit: Murder has been committed, on or about the 24th day of July A.D. 1960, in the County of Yuma, State of Arizona, and that there is sufficient cause to believe that William H. Woolery is guilty thereof, I order that he, the said William H. Woolery be held to answer the same * * *."

An information was thereupon filed against defendant accusing him of the crime of:

"Felony, to-wit: Murder. Committed as follows, to-wit: That the said William H. Woolery on or about the 24th day of July, 1960, and before the filing of this information, at, and in the County of Yuma, State of Arizona, did then and there wilfully, unlawfully, feloniously and with malice aforethought kill and murder one Paula Dinnell, a human being."

The defendant contends that the trial court erred in permitting the county attorney to voir dire the jury on whether they had any scruples against infliction of the death penalty, and in allowing challenges for cause of jurors having such scruples, for the reason that the charge of murder stated in the information could only charge the defendant with second degree murder which is not punishable by death. Defendant ar-

gues that the order of the magistrate holding defendant to answer upon the charge of murder, no degree being specified, necessarily charged defendant with second degree murder only, inasmuch as it could not appear from the evidence presented to the magistrate that the crime of first degree murder had been committed. Hence, he contends, he was necessarily charged in the information with second degree murder since the only crime a county attorney may charge in an information is that offense set forth in the order of the committing magistrate holding the defendant to answer.

It is defendant's position that a jury may only be examined regarding their scruples on capital punishment when the defendant is properly charged with the commission of an offense punishable capitally, and a jury selected after such examination and the allowance of challenges for cause based thereon, is improperly constituted if the defendant is not charged with a capital offense. Defendant therefore contends that by allowing challenges to jurors having scruples against capital punishment he was deprived of a properly and lawfully constituted jury which resulted in denial of a substantial right constituting reversible error.

This assignment is without merit. Rule 115, Rules of Criminal Procedure, 17 A.R.S., provides in pertinent part:

"A. The indictment or information may charge, and is valid and sufficient if it charges, the offense for which the defendant is being prosecuted in one or more of the following ways:

"1. By using the name given to the offense by the common law or by a statute.

"2. By stating so much of the definition of the offense, either in terms of the common law or of the statute defining the offense or in terms of substantially the same meaning, as is sufficient to give the court and the defendant notice of what offense is intended to be charged."

A.R.S. § 13–451 defines murder as the "unlawful killing of a human being with malice aforethought." The offense is broken down into degrees in A.R.S. § 13–452. Rule 142, Rules of Criminal Procedure, 17 A.R.S., provides that:

"In an indictment or information for an offense which is divided into degrees it is sufficient to charge that the defendant committed the offense, without specifying the degree."

The information in the case at bar charged the defendant with having committed the crime of "murder", no degree being specified. An information which charges murder without specifying the degree is sufficient to charge murder in the

first degree.[1] Macias v. State, 39 Ariz. 303, 6 P.2d 423 (1931); People v. Coston, 84 Cal. App.2d 645, 191 P.2d 521 (1948). See also State v. Jefferds, 89 R.I. 272, 152 A.2d 231 (1959). Rule 294, Rules of Criminal Procedure, 17 A.R.S., provides that "if the * * * information charges an offense which is divided into degrees, without specifying the degree, the jurors may find the defendant guilty of any degree of the offense charged." Since the information was sufficient to charge first degree murder, voir dire and challenges for cause on the death penalty were proper under Rule 219, subd. A (14), Rules of Criminal Procedure, 17 A.R.S.

■ It is further contended by the defendant that the trial court did not have jurisdiction to try defendant for first degree murder and therefore erred in submitting a verdict of first degree murder to the jury. Defendant argues that no preliminary examination was held in which any evidence of first degree murder was shown and hence, defendant was held to answer and was charged in the information with second degree murder. The record discloses there was sufficient evidence before the magistrate to bind the defendant over on a charge which included first degree murder.

■ The assignment that the trial court erred in denying defendant's motion to quash the information insofar as it charged defendant with first degree murder is without merit. The motion to quash was made during voir dire on the ground that the evidence before the magistrate was not sufficient to find probable cause that first degree murder had been committed. The question of the sufficiency of the evidence at the preliminary examination before the magistrate may not be raised by a motion to quash the information, State v. Dunivan, 77 Ariz. 42, 266 P.2d 1077 (1954); Ramirez v. State, 55 Ariz. 441, 103 P.2d 459 (1940), since it is not one of the enumerated grounds set forth in Rule 169, Rules of Criminal Procedure, 17 A.R.S. See also Pfeiffer v. State, 35 Ariz. 321, 278 P. 63 (1929).

Defendant's next assignment is that the trial court erred in denying his motion for change of venue. In support of such motion defendant filed an affidavit which stated that "the people of the county were biased and prejudiced against him by reason of the widespread publicity given the case in the local daily newspaper, radio coverage and a publication of the First Christian Church of Yuma called the Desert Guidepost." He contends that due to

---

1. It would be sufficient to charge murder in the first degree either under the common-law definition of "murder" or under the statutory definition of "murder" since the statutory definition of murder embraces everything which is contained in the statutory section and the offense thus described includes each of the degrees prescribed by statute. See State v. Jefferds, 89 R.I. 272, 152 A.2d 231 (1959).

the widespread publicity given the case and the jurors familiarity with the witnesses he was deprived of a fair and impartial trial.

■ The propriety of granting or refusing an application for change of venue is largely a matter of discretion of the trial court which we will not disturb unless it clearly appears that such discretion was abused. State v. McGee, 91 Ariz. 101, 370 P.2d 261 (1962); State v. Robinson, 89 Ariz. 224, 360 P.2d 474 (1961); State v. Thomas, 78 Ariz. 52, 275 P.2d 408 (1954); Burgunder v. State, 55 Ariz. 411, 103 P.2d 256 (1940).

We have examined the record in the case at bar and it does not appear to us that the trial court abused its discretion in denying the motion for change of venue. An examination of the newspaper articles discloses that they are the usual newspaper articles which accompany an incident such as was involved in this action. The article from the "Desert Guidepost" stated that although the defendant had shot Paula Dinnell, the true killer was liquor and those who sold it or approved of its consumption.[2] Although some of the jurors knew one or more of the doctors listed as witnesses (most only casually), all stated that they could be impartial.

■■ Defendant admits that "mere familiarity with witnesses or with newspaper accounts of evidence to be presented in a trial do not by themselves necessarily show conclusively that an application for removal should be granted." We find nothing more has been shown. Th prospective jurors were carefully examined, both collectively and individually, as to whether they had read the articles and whether they could be impartial. The voir dire consumed some 450 pages of transcript. Only eight persons were excused on a challenge for cause for bias or fixed opinion.[3] Altogether, only 48 jurors were drawn and sworn in obtaining the 32 jurors from which the panel of 12 was selected. Defendant passed the 12 selected as jurors without challenging any of them for cause. Before the trial court is justified in granting a motion for change of venue "it must affirmatively appear from the showing that there is such a feeling of prejudice prevailing in the community as will be reasonably certain to prevent a fair and impartial trial." Elias v. Territory, 9 Ariz. 1, 4, 76 P. 605, 606 (1904). No such showing was made in the case at bar.

Defendant's fifth and sixth assignments are that the trial court erred in admitting the testimony of certain witnesses as to statements made by the deceased concern-

---

2. None of the jurors who actually tried the case had read the article.

3. Some of these were challenged by the State.

ing the shooting. The statements were admitted upon the theory that they constituted spontaneous exclamations. Defendant contends that the statements did not qualify as spontaneous exclamations and the trial court therefore abused its discretion in admitting them.

▌ A spontaneous exclamation has been defined as a "statement or exclamation made immediately after some exciting occasion by a participant or spectator and asserting the circumstances of that occasion as it is observed by him." Keefe v. State, 50 Ariz. 293, 297, 72 P.2d 425, 427 (1937).[4] In order for such statements or exclamations to come within the exception of the hearsay rule there are three requisites: (1) There must be a startling event; (2) The words spoken must be spoken soon after the event so as not to give the person speaking the words a time to fabricate; and (3) The words spoken must relate to the startling event. State v. McLain, 74 Ariz. 132, 245 P.2d 278 (1952).

In the present case it is undisputed that there was a startling event and that the words spoken related to that event. The question is whether there was too great a period of time lapse between the startling event and the statements. Deceased was shot at approximately 2:50 a.m. and was admitted to the hospital at 2:55 a.m. She made two statements concerning the shooting within twenty to twenty-five minutes after she had been shot. The statements were made to the doctor attending her and to a police officer in response to the inquiry "what happened". At the time deceased made the statements she was in a state of shock and in grave condition. Defendant contends that the statements did not qualify as spontaneous exclamations because they were not made *immediately* after the startling event and were made in response to the inquiry "what happened".

▌ While the time element is always important in determining whether an excited statement or declaration should be admitted, the statement need not be made at the identical instant of the startling event. The cases have made no attempt to fix any arbitrary number of minutes or hours within which the statement must have

4. In Keefe we stated that:
"The admissibility of such exclamation is based on our experience that, under certain external circumstances of physical or mental shock, a stress of nervous excitement may be produced in a spectator which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock. Since this utterance is made under the immediate and uncontrolled domination of the senses, rather than reason and reflection, and during the brief period when consideration of self-interest could not have been fully brought to bear, the utterance may be taken as expressing the real belief of the speaker as to the facts just observed by him." 50 Ariz. 297, 72 P.2d 427.

been made. See State v. McLain, supra; Solice v. State, 21 Ariz. 592, 193 P. 19 (1920). See also Udall, Arizona Law of Evidence § 174.

■ In the instant case we think that the statements were made under such circumstances of physical shock and within a short enough period of time as to preclude the likelihood of reflection and fabrication. The fact that the statements were made in response to the question "what happened" did not make them any the less spontaneous exclamations. State v. McLain, supra. The trial court did not abuse its discretion in admitting them. Musgrave v. Karis, 63 Ariz. 417, 163 P.2d 278 (1945).[5]

■ Defendant also complains of the admission of the testimony of Margaret Saxton, a nurse, as to a statement she heard the deceased make at 4 a. m. This statement was the first to be admitted into evidence. It later became apparent to the trial court that this statement was not a spontaneous exclamation. Although it was error to admit this testimony we do not deem it prejudicial error inasmuch as the statement was essentially the same as those made to the doctor and police officer.

Defendant next contends that the trial court erred in denying his motions for a mistrial and for a new trial which were based on the ground that certain statements of the county attorney in his closing argument to the jury were improper and prejudicial. With the exception of portions of the State's closing argument, the arguments were not reported. Defendant made no objection to the statements, except for one, either at the time the complained of statements were made or at the completion of the final argument. The motion for mistrial was based upon the one statement objected to plus two additional statements which are not before us on this appeal.

■ We stated in State v. Silvas, 91 Ariz. 386, 392, 372 P.2d 718, 723 (1962), that "[i]t has long been the rule of this Court that if improper statements are made by counsel during the trial it is the duty of opposing counsel to register an objection thereto so that the court may make a correction by proper instruction". Failure to object to argument of counsel constitutes a waiver of the right to have it reviewed. State v. Silvas, supra. As to those statements not objected to by defendant, no question was preserved for review.

■ The county attorney, in arguing premeditation, said that deceased's minister had given him an idea concerning the case. A mistrial was urged by defendant on the basis of this statement. In denying the

5. The modern trend is to be liberal in the admission of spontaneous or excited utterances, and to leave the matter largely within the trial court's discretion.

See Udall, Arizona Law of Evidence, § 174; 6 Wigmore on Evidence (3rd ed.) § 1750; McCormick on Evidence, § 272.

motion for mistrial the trial court stated that it did not consider the argument to be so prejudicial that an instruction (that the jury was not to take statements of counsel or their argument as being any part of the evidence) would not cure it.[6] In State v. Merryman, 79 Ariz. 73, 283 P.2d 239 (1955) we said:

> "The general rule is that whether or not improper argument in a criminal case has influenced the verdict must be left to the sound discretion of the trial court on motion for a new trial. * * If there has been no abuse of that discretion and it appears that substantial justice has been done the court will not reverse the judgment." 79 Ariz. 74, 283 P.2d 241.

See also State v. Dowthard, 92 Ariz. 44, 373 P.2d 357 (1962). It does not appear that the court abused its discretion in the instant case in denying defendant's motion and it appears that substantial justice has been done.

 Defendant next assigns as error the failure of the trial court to submit certain instructions on proximate cause to the jury. Defendant's requested instructions Nos. 108a and 108c, dealt with the test to apply to determine the proximate cause or causes of death where the acts of two or more persons are involved, intervening cause, immediate cause and foreseeability. Defendant's requested instruction No. 109a dealt with the question of proximate cause in the situation in which the act of the accused in wounding a victim is followed by gross negligence on the part of the attending physicians. The court properly refused to give all of these instructions. The subject matter had been adequately covered by the court in the instructions given. Where other instructions properly inform the jury as to the issues it is not error to refuse requested instructions covering the same subject matter. People v. Hill, 76 Cal.App.2d 330, 173 P.2d 26 (1946).

 Defendant's requested instruction No. 109b stated in part " * * * since the proof shows the wound inflicted by the Defendant upon Paula Dinnell was not the direct cause of death * * *." The instruction constituted a comment on the evidence. The direct cause of death was a fact question for the jury. The trial court properly refused to give this instruction.

The defendant assigns as error the admission of the testimony of the State's witness, Dr. Paul Slosser, as to the cause of death.[7] Dr. Slosser testified that in his opinion Paula Dinnell died of the gunshot wound. When asked to explain the basis of his opinion Dr. Slosser testified as follows:

---

6. The instruction was given.

7. Dr. Slosser, the attending physician, was present during the entire operation and until the death of deceased.

"The reasons, of course, are that we would not have been operating if she had not have been shot. She vomited, she aspirated some of the vomus into the right lung, by Dr. Nelson being unable to hear the breath sounds on the right side. Her heart stopped, not immediately, after that occurred, but a while afterwards. And it was massaged, it was weak, and it did not respond, and after a while, she died. Now shock comes into this as a result of the gunshot wound, not as a result of anything else. Shock carries with it a lower oxygen tension in the blood stream, and so the heart was weakened, as I said, it stopped, was massaged. So I say again, *she died as a result of her abdominal wound, with all the resulting things afterwards.*" (Emphasis supplied.)

The defendant contends that the court erred in admitting the opinion of Dr. Slosser as to the cause of death for the reason that such opinion did not take into consideration certain material facts, was not the best evidence available and usurped the province of the jury.

 Defendant objected to Dr. Slosser testifying as to his opinion as to the cause of death on the ground it wasn't the best evidence available. This was based on the fact that the doctor gave his opinion without taking into consideration the autopsy. Defendant contends the best evidence rule requires that the highest degree of proof of which a question of fact is susceptible must be produced if such proof is accessible. He cites State v. Price, 76 Ariz. 385, 265 P.2d 444 (1954), and Lee v. Molinsky, 77 Ariz. 184, 268 P.2d 975 (1954) in support of his argument. This argument is not well taken. The "best evidence rule" is a principle relating *only to writings,* requiring the production of an original document or writing unless unavailable. State v. Price, supra, and Lee v. Molinsky, supra, are two Arizona cases which have misconstrued the "best evidence rule".

 It is well established that a doctor may give his expert opinion as to the cause of death. Antone v. State, 49 Ariz. 168, 65 P.2d 646 (1937); Udall, Arizona Law of Evidence, §§ 21, 24.

See also anno., 136 A.L.R. 965 (1942); 66 A.L.R. 1082 (1959), "Admissibility of opinion evidence as to cause of death, disease, or injury." The opinion may be based on either personal observation or a hypothetical question. The reasonableness of the expert's opinion and the weight to be given it is a matter for the trier of facts.[8] State v. Romo, 66 Ariz. 174, 185 P.2d 757 (1947).

The opinion of Dr. Slosser, the attending physician, as to the cause of death was admissible. He was there during the opera-

8. The jury was properly instructed on this point.

tion and at the time of death. In addition, all the observed facts upon which his opinion were based were before the jury. The assignment is without merit.

Defendant's last assignment of error is that the trial court abused its discretion in failing to grant a new trial. He contends that a consideration of the evidence as a whole demonstrates clearly that the State did not prove the guilt of the defendant of the crime of second degree murder beyond a reasonable doubt.

 The rule is well established that where the sufficiency of the evidence to support a conviction is in issue, the evidence is to be viewed in the light most favorable to the state, and all reasonable inferences therefrom must be taken in the most unfavorable manner to the defendant. State v. Silvas, supra; State v. Hilliard, 89 Ariz. 129, 359 P.2d 66 (1961); State v. Evans, 88 Ariz. 364, 356 P.2d 1106 (1960); State v. Milton, 85 Ariz. 69, 331 P.2d 846 (1958). This Court will not substitute its judgment for that of the jury where the verdict finds substantial support in the evidence. State v. Silvas, supra. Taking the evidence in the light most favorable to the verdict, we hold that the evidence was sufficient to sustain the conviction.

The judgment is affirmed.

BERNSTEIN, C. J., UDALL, V. C. J., and STRUCKMEYER and LOCKWOOD, JJ., concur.