448 P.2d 104

The STATE of Arizona, Appellee,

v.

Ray Laroyce BEERS, Appellant.

No. 1 CA–CR 178.

Court of Appeals of Arizona.

Dec. 10, 1968.

Rehearing Denied Jan. 2, 1969.

Review Denied Feb. 4, 1969.

Gary K. Nelson, Atty. Gen., by Carl Waag and James S. Tegart, Asst. Attys. Gen., for appellee.

Rawlins, Ellis, Burrus & Kiewitt, by Chester J. Peterson, Phoenix, for appellant.

DONOFRIO, Judge.

This is an appeal from the judgment pronounced following the verdict of a jury finding defendant guilty of the crime of manslaughter, A.R.S. § 13–455 and § 13–456.

On Saturday morning, July 29, 1967, defendant was tending his foster son at the family residence. The seventeen-month-old child began to cry and defendant shook him to try to quiet him. As defendant shook the infant, the baby's head dropped to defendant's chest and the child stopped breathing. Defendant thereupon took the child to a nearby fire station where a

resuscitator was used. The child was rushed to a hospital where he later died.

Although there were no witnesses to the shaking, and the defendant himself did not testify, he made several remarks to a fireman and a social worker. These remarks include statements that he had shaken the child immediately before the child went into a coma. He told the social worker that he had shaken the child several times prior to this. It was the testimony of all the medical experts that the infant had died from cerebral edema and that such a condition might have been the result of a severe shaking or a series of shakings.

The following questions are presented for review:

1. Was the evidence in this case sufficient to establish that the death of the child resulted from any act of the defendant?

2. If so, was the death an excusable homicide?

3. Did the court err in its instructions to the jury?

4. Was the County Attorney guilty of misconduct in his argument to the jury?

5. Was there prejudicial error in admitting in evidence two photographs of the bruised, nude body of the deceased?

## SUFFICIENCY OF EVIDENCE

■ What is an appellate court's position in determining the sufficiency of evidence in a criminal conviction? There must be a complete absence of probative facts to substantiate the verdict in order for this Court to reverse on the grounds of insufficient evidence. If reasonable men might differ as to the existence of certain facts, then there is sufficient evidence to sustain a jury's verdict. State v. Bearden, 99 Ariz. 1, 405 P.2d 885 (1965).

■ The state has the burden of proof in all criminal cases. Whether the case against the defendant is based upon circumstantial evidence or direct evidence, the degree of proof remains the same, and that degree is that the persuasion must be beyond a reasonable doubt. A.R.S. § 13-

162; State v. Ferguson, 77 N.M. 441, 423 P.2d 872 (1967). While the burden of proof remains the same, the introduction of circumstantial evidence creates a fact situation for the jury to resolve with a proper instruction regarding the quality of circumstantial evidence necessary to sustain a finding of guilty.

■ Defendant contends that there was not sufficient evidence to establish that he was responsible for any act which caused the condition resulting in the death of the child. He points out that the circumstantial evidence failed because it does not "exclude every reasonable hypothesis of innocence". This is the correct test when the state is relying solely on circumstantial evidence. The State, however, is not relying solely on circumstantial evidence in this case.

In the case of State v. Green, 103 Ariz. 211, 439 P.2d 483 (1968), our Supreme Court had before it a case where the defendant contended that the verdict of guilty against him was based solely upon circumstantial evidence and was not inconsistent with every reasonable hypothesis of innocence. In that case the court held:

"We have consistently held in the past that because of the dangers that lurk in a conviction based solely on circumstantial evidence an instruction must be given to the jury that the 'evidence must not only be consistent with guilt but inconsistent with every reasonable hypothesis of innocence.'" 439 P.2d 483 at page 484.

The instruction discussed in State v. Green, supra, was not given in the instant case. There is no evidence of a request for such an instruction, and if there was such a request defendant has failed to include the instruction in haec verba in the appendix to his brief, pursuant to Rules 15 and 5(b) (10) of the Supreme Court, 17 A.R.S. Zakroff v. May, 8 Ariz.App. 101, 443 P.2d 916 (1968); Dykeman v. Ashton, 8 Ariz.App. 327, 446 P.2d 26 (decided October 17, 1968).

Since the defendant was not convicted on circumstantial evidence alone, but also on

direct evidence of admissions made by defendant to various persons, we do not consider failure to give this instruction such fundamental error as to require a reversal. We are not suggesting, however, that on a retrial the instruction be not given.

■ The Arizona Supreme Court has stated:

"* * * We said in State v. Daymus, 90 Ariz. 294, 306, 367 P.2d 647, 655:

"'The weight of authority is that the court on its own motion is under a duty to give proper instructions as to the effect of circumstantial evidence *if the prosecution must rely exclusively on circumstantial evidence to convict.*'" (Emphasis supplied) State v. Tigue, 95 Ariz. 45, 47, 386 P.2d 402, 404 (1963).

It is the law that confessions and admissions of the accused are direct evidence. State v. Maynard, 101 Ariz. 239, 418 P.2d 576 (1966); State v. Daymus, 90 Ariz. 294, 367 P.2d 647 (1961). In both the Maynard and Daymus cases the courts refused to find error for failure to give a circumstantial evidence instruction sua sponte.

■ This Court finds there is sufficient evidence to sustain a guilty verdict, and there is sufficient direct evidence to negate the giving of the circumstantial evidence instruction sua sponte.

## EXCUSABLE HOMICIDE

A.R.S. § 13–460 provides:

"Homicide is excusable when:

"1. Committed by accident and misfortune, or in doing a lawful act by lawful means, with usual and ordinary caution, and without any unlawful intent."

■ Defendant's only witnesses were five parents who testified that shaking a child was proper discipline. Even if this evidence could be considered sufficient to show that defendant's actions were lawful, they did not shed any light as to whether defendant's actions at the time in question were with usual and ordinary caution. It is the trier of fact who determines if the acts of the accused were done with the usual and ordinary caution. There was sufficient testimony to substantiate a finding by the jury that the deceased was shaken with such severity as to fall within the criminal prohibitions of A.R.S. § 13–455 and § 13–456 and outside the ambit of A.R.S. § 13–460.

## IMPROPER INSTRUCTIONS

■ The defendant states that the court erred in refusing to give his requested instruction when instructing on excusable homicide. Defendant's requested instruction read as follows:

"In this connection, you are instructed that the word 'accident' used in this statute, is used in its general sense and meaning, and when so used to express a result produced by human action, is understood to mean a thing done or disaster caused or produced without design or intention."

This is a correct restatement of the law, and is almost verbatim from Stokes v. Territory, 14 Ariz. 242, 127 P. 742 (1912). We feel that absence of such instruction is not such error as to require a reversal.

Where the word to be defined is a word of ordinary significance, it is not required that the court define the term in the instruction. State v. Perry, 5 Ariz.App. 315, 426 P.2d 415 (1967). We can presume that the word "accident" is so common that its meaning is well understood by any jury of ordinary intelligence.

## MISCONDUCT OF PROSECUTOR

During the course of the final argument to the jury the deputy county attorney stated the following:

"Well, Jamie Boyett is not here to tell us what happened in the days and the weeks before this horrible occurrence.

"As I recall the evidence, he was just beginning to speak, and he could say a few words. Well, he never has had an opportunity to speak and never will.

"And if you recall, during all the evidence in this case, the defendant has had

his family and his friends sitting behind him, behind him all the way, interested in the outcome of this matter.

"Jamie Boyett has no one."

▉ The defendant states that these remarks were calculated to inflame the minds of the jurors so that their verdict would be the result of passion or prejudice or influence. The defendant is correct in that this is the test as to whether or not remarks are improper and require a new trial. State v. Merryman, 79 Ariz. 73, 283 P.2d 239 (1965). However, as pointed out in the *Merryman* case:

"The general rule is that whether or not improper argument in a criminal case has influenced the verdict must be left to the sound discretion of the trial court on motion for a new trial. Hoy v. State, 53 Ariz. 440, 90 P.2d 623; State v. White, 56 Ariz. 189, 106 P.2d 508. If there has been no abuse of that discretion and it appears that substantial justice has been done the court will not reverse the judgment. * * *" 79 Ariz. at pages 74, 75, 283 P.2d 239 at page 241.

▉ We feel that the prosecutor's statements are not such as to cause this Court to reverse the lower court for abuse of discretion. These remarks, although they may be borderline examples, do fall within the wide latitude approved by the Arizona Supreme Court.

## ADMISSION OF PHOTOGRAPHS

▉ The deputy county attorney introduced two pictures of the deceased child. The pictures showed his nude corpse with bruises visible all over his body. The purpose of the deputy county attorney in introducing the photographs was apparently two-fold: first, to identify the deceased, and second, to show the manner and method of death. The court admitted the pictures over objection and even though the defense admitted the death of the child.

In homicide prosecutions it is an acceptable practice for prosecutors to introduce pictures of the corpse to show the identity of the deceased and to corroborate the State's theory as to the manner, method or purpose of the crime. Udall, Arizona Law of Evidence, Sec. 131; 86 A.L.R.2d 718. The Court recognizes the doctrine that in the area of admissibility of exhibits the trial court's discretion will not be disturbed even though the effect of the exhibits may be arguably prejudicial, unless such discretion has been abused. Zier v. Shamrock Dairy of Phoenix, Inc., 4 Ariz.App. 382, 420 P.2d 954 (1967). In this case, however, we feel the trial court abused its discretion by permitting the photographs to be introduced in evidence as they were so highly inflammatory under the circumstances that their probative value did not outweigh their probable prejudicial effect.

We find no evidence in the record which might sustain a finding that the bruises over the body as shown by the pictures were caused by the defendant. The only evidence relating to the matter was that of the social worker who testified that defendant had hold her he had punished his foster child before and that his method of punishment was to stand the child upright on the defendant's knees and hold him by the ankles so that he would not fall. No reference except in identification was made to the photographs by any witness which made the photographs relevant to any of the issues in the case. The prosecutor made reference to the pictures and bruises in his closing argument:

"Now, we have no idea as to what the extent of the punishment was, the shaking or the other forms of punishment in this case.

"Now, when you examine these photographs you will have an opportunity to examine the way the child looked on August 2, and you will have an opportunity to see what appeared to be bruises on the leg area.

"And I don't care to wave these in front of you. I do want you to look at them, though, when you deliberate the case.

**539**

"We don't know what this man did to this child. I submit to you that a person in his position is much more likely to minimize his own acts as he is to be completely candid and state everything and in detail and the extent."

It seems to us, in view of the admission of the death of the child and the other evidence in the case, the photographs were unnecessary and were likely to give a wrong impression that defendant caused the bruises on the body and that these bruises were the cause of death which was wholly unsupported by the evidence. The exhibits being photographs of the nude corpse of a seventeen-month-old child showing bruises in excess of twenty-four hours old on his body were likely to create undue sympathy or prejudice on the part of the jury.

■ It is the court's duty to weigh the danger of prejudice to the defendant, against the probative value of the evidence. People v. Arguello, 65 Cal.2d 768, 56 Cal. Rptr. 274, 423 P.2d 202 (1967); Commonwealth v. Wilson, 431 Pa. 21, 244 A.2d 734 (1968). The cases are numerous which state that although the admission of photographs is within the sound discretion of the trial court, an appellate court can and will reverse a trial court when the photographs are so inflammatory as to outweigh their probative value. Oxendine v. State, 335 P. 2d 940 (Okl.Cr.1958); People v. Burns, 109 Cal.App.2d 524, 241 P.2d 308, 242 P.2d 9 (1952); Commonwealth v. Eckhart, 430 Pa. 311, 242 A.2d 271 (1968).

A recent Illinois case reversed the lower court which admitted photographs of the defendant although erroneous inferences may have been made therefrom and there was no probative purpose for their admission in evidence. People v. Murdock, 39 Ill.2d 553, 237 N.W.2d 442 (1968). In the case of Commonwealth v. Eckhart supra, an abuse of discretion was found when the trial court admitted certain photographs where portions of the photographs were irrelevant and highly inflamatory. Such is the situation in the case before this Court, where the bruises on the body

of the deceased are both irrelevant due to the lack of foundation, and highly inflammatory.

The photographs, coupled with the deputy county attorney's inflammatory rhetoric in his closing argument, may have inflamed the jury into acting out of passion rather than logic. We believe the danger is that this highly inflammatory matter might have caused the jury to act irrationally and assume that all the bruises were the result of some heinous method of punishment by the defendant, and that such punishment contributed to the child's death.

We are cognizant of the multiple admissibility rule followed in Arizona. Udall, Arizona Law of Evidence, Sec. 11. There are exceptions to this rule, and in this case we feel that the general requirements of justice dictate that this Court find an abuse of discretion by the trial court.

Wigmore, in explaining the nature of his Rules of Auxiliary Probative Policy, points out:

"* * * Assume, then, that those principles of Relevancy have been satisfied, and that certain facts, have passed the gauntlet and are evidentially worthy to be considered. There still may remain for them another gauntlet to pass. They may be amenable to certain other rules, applicable to specific classes of evidential material, and designed to strengthen here and there the evidential fabric and *to secure it against dangers and weaknesses pointed out by experience.*" 4 Wigmore, Evidence, Sec. 1171 (3d Ed.)

The Arizona Supreme Court has apparently adopted this same reasoning:

"* * * Relevancy is thus not the sole test of the admissibility of evidence; admissibility depends, rather, on a balancing of the various effects of the admission of such evidence, considered in the light of recognized rules of law governing the administration of criminal justice." State v. Little, 87 Ariz. 295, 307, 350 P.2d 756, 763, 86 A.L.R.2d 1120 (1960).

In summary, this Court finds that there was sufficient evidence of homicide, not excusable, to sustain a manslaughter conviction; that there was no misconduct of the prosecutor; that there was no error in the instructions given; but that there was reversible error in the admission of the pictures of the nude, bruised body of the deceased, without sufficient evidence to connect the bruises to the death of the child. Accordingly, this case is reversed and remanded for a new trial.

CAMERON, C. J., and STEVENS, J., concur.