460 P.2d 177

**STATE of Arizona, Appellee,**

v.

**William Junior JOHNS, Appellant.**

**No. 1926.**

Supreme Court of Arizona.

In Banc.

Nov. 4, 1969.

Wolfram & Krom, by Donald E. Wolfram, Phoenix, for appellant.

Gary Nelson, Atty. Gen., by Thomas Tuggle and Carl Waag, Asst. Attys. Gen., for appellee.

UDALL, Chief Justice:

The appellant, William Junior Johns, was brought to trial in the Superior Court of Maricopa County on a charge of murder. At the conclusion of the trial the jury found him guilty of murder in the first degree and he was sentenced to life imprisonment to commence February 8, 1966. Thereafter, motions for a new trial, in arrest of judgment and for reduction of verdict to voluntary manslaughter, were denied.

The defendant failed to file a notice of appeal within the requisite 60-day period but his court-appointed attorney filed a motion to take a delayed appeal which was granted by this Court on September 25, 1968.

The facts and circumstances surrounding the commission of the crime are as follows:

On June 8, 1965 defendant went to the home where his estranged wife was living, whereupon he shot and killed John Funnell. Upon shooting the victim the defendant then turned to his estranged wife and shot at her. Defendant then shot himself in the upper left portion of his chest.

The defendant left two hand-written notes. One was found on the dashboard of his car, and the other was in his shirt pocket. Both of these notes indicated that he intended to murder his wife and then commit suicide.

The first question presented by the defendant on appeal is whether the verdict of first-degree murder is contrary to the weight of the evidence in that the state failed to prove, as a matter of law, the necessary deliberation and premeditation to warrant the conviction of first-degree murder.

Where a question of the weight of the evidence is concerned it is a question for the decision of the jury and not for the appellate court. Where there is substantial evidence from which reasonable persons could derive the fact of guilt, the jury's finding, based on that evidence, should not be disturbed. State v. Green, 103 Ariz. 211, 439 P.2d 483; State v. Bearden, 99 Ariz. 1, 405 P.2d 885; State v. Beers, 8 Ariz.App. 534, 448 P.2d 104.

It would appear from the record that there was sufficient evidence upon which reasonable men might determine the appellant acted deliberately and with premeditation.

The testimony of Kikuie May Swanson (Kennedy) and the testimony of defendant, as it relates to the question of deliberation and premeditation, is substantially as follows: Mrs. Swanson testified that at approximately 1:30 a. m. on July 8, 1965, the deceased and Mrs. Johns [the estranged wife of the defendant] came to her home where Mrs. Johns and her two young children had been staying for a period of time; that the three of them had something to eat and then Mrs. Swanson requested the deceased to go out to her car and get a package of dog food.

When the deceased went outside he met the defendant. Defendant testified that sharp words were exchanged between himself and the deceased and that—as the deceased walked toward him, he was afraid because of the size of deceased. He then moved over to his car, and as a matter of defending himself—he reached in and got his gun and drew it on the deceased. Immediately thereafter the deceased, with his hands up, walked back toward the house. It would appear that the defendant had abandoned his idea of using the gun for self-defense when he followed the deceased into the house with a drawn and loaded gun.

Mrs. Swanson described the scene as they entered the house:

Q "Would you relate to the court and jury what happened just immediately prior to the shooting?

A "I had asked Mr. Funnell to go out to the car and get some dog food that I had left in my Corvair. He went outside and I sat down on the couch across from Mrs. Johns, and we were talking and he came back in the house with his hands in the air. And then Mrs. Johns screamed out ["Junior"] and Mr. Funnell turned his head slightly. At the same time the shot rang out and Mrs. Johns moved toward the center of the room, and I fell towards the floor. I saw him point the gun toward her and heard a second shot.

Q "Who do you mean by 'her'?"

A "Mrs. Johns * * *

* * * * * *

Q "Now, did Mr. Funnell still have his hands in the air at the time he was shot, as far as you can recall?

A "Yes, sir."

She further testified that the defendant was approximately seven feet behind the deceased at the time the fatal shot was fired.

Defendant maintained that he had no intention of shooting his wife. However, Mrs. Swanson stated that almost immediately after the shooting took place she went over to the couch where Mrs. Johns was lying, and "he asked me, is she dead?" "I told him I didn't know." This would indicate that he fully expected the shot he fired at her might well have been fatal.

The testimony of the defendant, wherein he related a part of the conversation between himself and the deceased outside the home of Mrs. Swanson and just before the shooting, shows the defendant's state of mind. He testified: "He asked me 'what the hell' I was doing? I told him I had come to see my kids and he told me that he had brought my wife home, by God; didn't I like it?"

This testimony, together with the testimony of Mrs. Swanson relative to what happened immediately after the shooting, is revealing. She stated:

"Mr. Johns asked me to call an ambulance. So I called the operator and asked her to call an ambulance, and then I asked him 'Why?' He said, 'I can't help it. I still loved her.'"

The testimony relating to the facts immediately before and after the shooting—clearly shows the deep-seated hatred and jealousy the defendant felt toward the deceased.

The two notes written by the defendant, which were found after the shooting, coupled with the other facts and circumstances in the case, clearly provide testimony from which the jury, as the trier of the facts, could conclude that the defendant did deliberately, and with premeditation, shoot the victim, shoot at his wife and shoot himself. We have held that the formation of an intention to kill—and the killing—may be as instantaneous as successive thoughts:

State v. McGee, 91 Ariz. 101, 370 P.2d 261 (1962); Sullivan v. State, 47 Ariz. 224, 55 P.2d 312; Faltin v. State, 17 Ariz. 278, 151 P. 952; and May v. State, 232 Ind. 523, 112 N.E.2d 439.

Our examination of the record on appeal shows that there was ample evidence from which the jury could conclude that the shooting of the deceased by the defendant was done with deliberation and premeditation.

The defendant next contends that the State has relied exclusively on circumstantial evidence to prove the necessary elements of deliberation and premeditation [as charged in the information], and therefore, the Court erred in failing to give, on its own motion, an instruction to the effect that the evidence must not only be consistent with guilt but inconsistent with every hypothesis of innocence.

 We cannot agree. The record shows that the evidence pointing toward defendant's guilt is almost exclusively direct; hence it was unnecessary to give such an instruction.

State v. Maynard, 101 Ariz. 239, 418 P.2d 576 (1966); State v. Beers, 8 Ariz.App. 534, 448 P.2d 104; State v. Stotts, 8 Ariz.App. 340, 446 P.2d 244; and State v. McCormick, 7 Ariz.App. 576, 442 P.2d 134.

The judgment and sentence of the court below is

Affirmed.

LOCKWOOD, V. C. J., and STRUCK-MEYER, McFARLAND and HAYS, JJ., concur.