484 P.2d 187

**The STATE of Arizona, Appellee,**

**v.**

**Charles SCHMID, Appellant.**

**No. 1837.**

Supreme Court of Arizona,
In Banc.

April 28, 1971.

Rehearing Denied May 25, 1971.

The facts of this case disclose that defendant was informed against on December 15, 1965, being charged with the May 31, 1964 murder of one Norma Alleen Rowe. After the jury had been empanelled and two prosecution witnesses, including defendant's accomplice—Mary French, had testified for the state, defendant entered a plea of guilty to a reduced charge of second-degree murder. The court, having ascertained that this plea was voluntarily, intelligently and freely made, thereupon proceeded to sentence defendant to imprisonment for a term of "not less than fifty (50) years, and not more than life."

On appeal, defendant has advanced five arguments in support of his contention that the trial court committed reversible error:

(1) "Errors of the trial judge in failing to grant proper motions for postponement or change of venue.

(2) "Errors of the trial judge in not excluding jurors who had expressed a prior opinion about the defendant's guilt and who knew of the relationship of the prosecution's witnesses (Fritz and Saunders) to the defendant," or of any aspect of this case.

(3) "Error of the trial judge in permitting the introduction into evidence of the prior crime by the defendant."

(4) "Error of the trial judge in systematically excluding from the jury panel all persons who stated they could not assess the death penalty in a proper case.

(5) "Coercion of the defendant by his own attorneys who advised him that he would in all probability be found guilty of first degree murder and that they were unwilling to conduct any sort of vigorous defense in his behalf."

We have reviewed the record and, having considered the arguments advanced by defendant, find such to be wholly without merit. Defendant was entitled to, and did receive, a fair and impartial trial.

Gary K. Nelson, Atty. Gen., by Carl Waag, former Asst. Atty. Gen., Andrew W. Bettwy, Asst. Atty. Gen., Phoenix, for appellee.

Lesher & Scruggs, by D. Thompson Slutes, Norval W. Jasper, Tucson, for appellant.

UDALL, Justice:

This is an appeal from a judgment of guilt and imposition of sentence following defendant's entry of a plea of guilty to second-degree murder.

(1) "ERRORS OF THE TRIAL JUDGE IN FAILING TO GRANT PROPER MOTIONS FOR POSTPONEMENT OR CHANGE OF VENUE."

 A change of venue or a continuance are not granted as a matter of right but are, rather, matters addressed to the sound discretion of the trial judge. We have often held that a trial judge's ruling on a motion for a change of venue or a continuance will not be disturbed on appeal unless a clear abuse of discretion appears and is shown to be prejudicial to defendant's cause. State v. Narten, 99 Ariz. 116, 407 P.2d 81 (1965); cert. denied 384 U.S. 1008, 86 S.Ct. 1985, 16 L.Ed.2d 1021 (1966); State v. Woolery, 93 Ariz. 76, 378 P.2d 751 (1963); State v. McGee, 91 Ariz. 101, 370 P.2d 261 (1962); cert. denied 371 U.S. 844, 83 S.Ct. 75, 9 L.Ed.2d 79 (1962). The trial judge is granted this discretion because he is the only unbiased party to an action who is in a position to observe the entire proceeding with an unjaundiced eye. He can observe the prospective jurors and witnesses, their testimony, demeanor and behavior, as well as the attitudes and crosscurrents of the community in determining whether any actual or supposed prejudice exists—such as would necessitate a change of venue or continuance. For this reason rulings on such motions are left to the sound discretion of the trial judge. We find no abuse of discretion here.

(2) "ERRORS OF THE TRIAL JUDGE IN NOT EXCLUDING JURORS WHO HAD EXPRESSED A PRIOR OPINION ABOUT THE DEFENDANT'S GUILT AND WHO KNEW OF THE RELATIONSHIP OF THE PROSECUTION'S WITNESSES (FRITZ and SAUNDERS) TO THE DEFENDANT" OR OF ANY ASPECT OF THE CASE.

 The fact that all of the empanelled jurors had some degree of knowledge of the facts of this case does not, in and of itself, demonstrate such prejudice as would necessitate a change of venue or continuance; although it is an important factor to be considered by the trial judge in ruling on such motion. Defendant, by his own judicial admission, admits there was no place within the United States where he could have been tried by a jury totally ignorant of some aspect of the case. His motion for continuance stated "that *national news coverage has been extensive*, including *but not limited to* Time Magazine, Newsweek Magazine, Washington News, The Evening Star, The Oregon Journal, *and others too numerous to mention."* [Emphasis added]

The failure of the trial judge to exclude for cause each prospective juror who admitted possessing some degree of knowledge of this case was not error: Rule 220, Rules of Criminal Procedure, 17 A.R.S., expressly provides that the fact that a person, called as a juror, has formed an opinion or impression based upon rumor, or upon news reports, about the truth of which he has expressed no opinion should not disqualify him to serve as a juror in such action, if he upon oath states that he believes he can fairly and impartially render a verdict in accordance with the law and the evidence, and the court is satisfied with the truth of such statement.

In repudiating an argument not too dissimilar from that at bar, the United States Supreme Court stated that mere possession of some knowledge of a case is insufficient, in and of itself, to require that a juror be excused for cause:

"In these days of newspaper enterprise and universal education, *every case of public interest is* almost, as a matter of necessity, *brought to the attention of all the intelligent people in the vicinity,* and scarcely any one can be found among those best fitted for jurors who has not read or heard of it, and who has not some impression or some opinion in respect to its merits.

It is clear, therefore, that upon the trial of the issue of fact raised by a challenge for such cause the court will practically be called upon to determine whether the nature and strength of the opinion formed are such as in law necessarily to raise the presumption of partiality. The question thus presented is one of mixed law and fact, and to be tried, as far as the facts are concerned, like any other issue of that character, upon the evidence. The finding of the trial court upon that issue ought not to be set aside by a reviewing court, unless the error is manifest. No less stringent rules should be applied by the reviewing court in such a case than those which govern in the consideration of motions for new trial because the verdict is against the evidence. *It must be made clearly to appear that upon the evidence the court ought to have found the juror had formed such an opinion that he could not in law be deemed impartial.* The case must be one in which it is manifest the law left nothing to the 'conscience or discretion' of the court." [Emphasis added] Reynolds v. United States, 98 U.S. 145 at 155–156, 25 L.Ed. 244 at 246 (1879).

And in Irvin v. Dowd, 366 U.S. 717 at 722–723, 81 S.Ct 1639 at 1642–1643, 6 L.Ed. 2d 751 at 756 (1961), this position was re-affirmed:

"It is not required, however, *that the jurors be totally ignorant of the facts and issues involved.* In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case.

This is particularly true in criminal cases. *To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient* to rebut the presumption of a prospective juror's im-

partiality *would be to establish an impossible standard.* It is *sufficient if the juror can lay aside his impression or opinion* and render a verdict based on the evidence presented in court. Spies v. People of State of Illinois, 123 U.S. 131, 8 S.Ct. 21, 22, 31 L.Ed. 80; Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021, 20 Ann.Cas. 1138; Reynolds v. United States, supra." [Emphasis added]

In support of defendant's contention that the trial judge abused his discretion in denying defendant's motions we are referred to the following cases: Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); Irvin v. Dowd, supra; Estes v. Texas, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965). Having compared the factual situations of the above-cited cases and the case at bar, we find that none of the critical, prejudicial factors in the cases cited are present in the case at bar. Here, the accused's trial was not televised (Estes Case, supra); the accused's trial did not take on a "carnival atmosphere", where both before and during the trial the news media grasped at stories and rumors leaked by the police, county officials and even the district attorney's office (Sheppard Case, supra); nor was the accused faced with a prospective jury 90% of whom had already formed an opinion as to the accused's guilt (Irvin case, supra). In the case at hand, to insure a minimum of publicity and a fair and impartial trial, the trial judge imposed rigorous restrictions on the personnel of the prosecutor's office and the sheriff's department prohibiting any form of comment on any aspect of this case.

(3) "ERROR OF THE TRIAL JUDGE IN PERMITTING THE INTRODUCTION INTO EVIDENCE OF THE PRIOR CRIME BY THE DEFENDANT."

 It is now a well-established principle that in the prosecution of one accused of a particular offense evidence which tends to show that the accused has or may have committed some other crime entirely

distinct from that for which he is now on trial is generally inadmissible. State v. Hughes, 102 Ariz. 118, 426 P.2d 386 (1967); State v. Byrd, 62 Ariz. 24, 152 P.2d 669 (1944); State v. Little, 87 Ariz. 295, 350 P.2d 756 (1960). To this general rule, however, there are a few well-known exceptions which are competent to prove the specific crime charged when it tends to establish: (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; and (5) the identity of the person charged with the commission of the crime on trial. State v. Byrd, supra; State v. Hardin, 99 Ariz. 56, 406 P.2d 406 (1965); State v. Hughes, supra; State v. DeVinney, 98 Ariz. 273, 403 P.2d 921 (1965); Udall, Arizona Law of Evidence § 115. Evidence of other criminal acts is also admissible when so blended or connected with the crime with which defendant is accused that proof of one incidentally involves the other or explains the circumstances of the crime. State v. Villavicencio, 95 Ariz. 199, 388 P.2d 245 (1964). Testimony to be introduced at defendant's short-lived trial, would have indicated that Schmid allegedly murdered Gretchen and Wendy Fritz in a desperate attempt to keep them from informing the authorities of his boastful admissions to them regarding his having killed Norma Aileen Rowe. Under these circumstances we believe evidence of the related murders would have been admissible because of the definite connection between the two crimes.

(4) "ERROR OF THE TRIAL JUDGE IN SYSTEMATICALLY EXCLUDING FROM THE JURY PANEL ALL PERSONS WHO STATED THAT THEY COULD NOT ASSESS THE DEATH PENALTY IN A PROPER CASE."

■■■ The exclusion of veniremen unequivocally opposed to capital punishment is constitutionally permitted. No prejudice is demonstrated merely by showing that potential jurors are excluded because of their personal opposition to imposing capital punishment under any circumstances whatsoever. See, State v. Narten, supra; State v. Woolery, supra; Witherspoon v. State of Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).

(5) "COERCION OF THE DEFENDANT BY HIS OWN ATTORNEYS WHO ADVISED HIM THAT HE WOULD IN ALL PROBABILITY BE FOUND GUILTY OF FIRST DEGREE MURDER AND THAT THEY WERE UNWILLING TO CONDUCT ANY SORT OF VIGOROUS DEFENSE IN HIS BEHALF."

■■■ We find this contention to be frivolous and wholly devoid of any merit whatsoever. In support of this argument defendant refers us to a conversation taped between himself and his attorneys prior to the commencement of trial; wherein trial strategy was discussed. After his attorneys had explained their proposed course of action to defendant the following conversation transpired:

TINNEY: "And I would like too, Lee, to have Charley express to us, in his own words, if he has any complaints, in any way, so far with how this case has been handled or in any of the procedures that occurred prior to the trial in preparation for the trial.

BAILEY: "Alright, you, Uh, from what you have seen of the case, Charley, and from what you have understood of it, to the extent that you understood it, are you satisfied with the way your defense is being conducted?

SCHMID: "Yes.

BAILEY: "There's no question about that?

SCHMID: "No.

BAILEY: "Alright.

TINNEY: "And you aren't saying that just to keep from hurting either of us now, because here is the time, Charley, to have it out.

BAILEY: "If you're not happy with this method, if you want someone to go on who has a different view of the case and try to defend you, we'll make application to the Court. I have no idea that it'll be granted, but you're entitled to make it. You have to decide which way you're going to go, and you're getting the best advice I can give you. That's all.

SCHMID: "Well, if you think it best, then I'll do it this way.

BAILEY: "I think that's sufficient."

Defendant's trial strategy had not been to plead defendant guilty to a reduced charge. The hopelessness of defendant's chances for acquittal, in spite of the fact that the body of Norma Alleen Rowe had never been found, first became apparent when an eyewitness and co-conspirator, Mary French, turned state's evidence and testified in the prosecution's behalf. She fully explained the motives behind the slaying; their plan to entice the victim into the desert where she would be killed and buried; and defendant's exuberance at having snuffed out the life of an innocent girl.

"Q Now, what was said between you and the defendant concerning girls?

"A Smitty [*Charles Schmid*] *said he wanted to kill someone,* a girl *and see if he could get away with it.*

"Q . Were there any names mentioned in any of these occasions?

"A Yes.

"Q What were the names that were mentioned?

"A Becky Quail, *Alleen Rowe* and Karel Willison.

\* \* \* \* \* \*

"Q And did you have a conversation with the defendant at that time?

"A Yes.

"Q What was that conversation?

"A He wanted me to keep trying to get Alleen to go out and *he wanted to kill someone* and do it that night and

that he was going to hit them with a rock *and bury them in the desert.*

\* \* \* \* \* \*

"Q And did you have a conversation with Miss Rowe about going out?

"A Yes.

"Q What was that conversation?

"A She said she would go out but we would have to wait until 11:00 when her mother left for work.

\* \* \* \* \* \*

"Q Now, where was Miss Rowe?

"A In the back [seat of the car].

"Q Was anyone else in the back?

"A John [Saunders].

"Q Now did you go somewhere after that?

"A We went straight to the desert.

\* \* \* \* \* \*

"Q What did you do? Did you remain in the car?

"A Yes.

"Q Did you see the defendant then after that?

"A Yes.

"Q How long after you had seen John?

"A Five minutes.

"Q All right. Now, can you describe defendant's appearance when you saw him?

"A *He was very excited.*

"Q Did he say anything to you at that time?

"A He said *'We killed her.'*

"Q Did he do anything at that time?

"A *He grabbed and kissed me.*

"Q Did he do anything then?

"A We got out and he got the shovel out of the back of the car.

"Q And what did you do then?

"A Went down in the wash.

"Q Now, did you see John Saunders when you went down in the wash?

"A Yes.

"Q Did you go down in the wash with the defendant, Mr. Schmid?

"A Yes.

"Q Did you see Alleen Rowe when you got down into the wash?

"A Yes.

"Q Where was she?

"A She was lying on the ground.

"Q Speak up, Miss French. Describe her appearance.

"A She was lying on her back and had blood all over her face.

"Q Was she moving at all, Miss French?

"A No.

"Q Could you determine if she was breathing at all?

"A No.

"Q Could you hear anything out of Miss Rowe?

"A No.

"Q All right, now what happened then?

"A Then we all started digging.

"Q Did all three of you dig?

"A Yes.

"Q What happened after the hole was dug?

"A *We put Alleen in it.*

"Q Now, *who* put Alleen in the hole?

"A *All three of us.*

"Q What happened after that?

 * * * * * *

"A Then *we covered her up* and John [Saunders] and Smitty [Charles Schmid] gathered up her curlers and buried them."

R.T. 1719–1738.

Defendant's contention that his plea was a result of coercion needs no discussion. By his own testimony Charles Schmid stands convicted: ·

BY THE COURT: "Mr. Schmid, your attorneys state you wish to enter a plea of guilty to the charge of second degree murder. Is that your desire?

BY MR. SCHMID: "Yes."

BY THE COURT: "Have you been—were any type of promises made to you insofar as this plea is concerned in order to get you to enter a plea of guilty?

BY MR. SCHMID: "No."

BY THE COURT: "Have any type of promises been made of any nature in order to get this plea of guilty?

BY MR. SCHMID: "None."

BY THE COURT: "Have any type of threats been made to you in order to get you to enter a plea of guilty?

BY MR. SCHMID: "None."

BY THE COURT: "You are entering this plea *voluntarily and of your own free will?*

BY MR. SCHMID: *"Yes, Your Honor."*

BY THE COURT: "Are you entering this plea of guilty because you are guilty or for some other reason?

BY MR. SCHMID: *"Because I am guilty."*

BY THE COURT: "You understand that *you are admitting* that on or about May 31, 1964, *you killed* a person by the name of Norma Alleen Rowe here in Pima County, Arizona, and you did so with malice; do you understand that?

BY MR. SCHMID: *"Yes."*

BY THE COURT: "The record may show the entry of a plea of guilty to the charge of second degree murder.

BY MR. BAILEY: "If the Court please, the Court may recall the record also shows if it is not implicit, nothing in connection with this plea is intended to affect the viability of the appeal in the first case, the death sentence which is currently on appeal."

BY THE COURT: "The record will so show.

Mr. Schafer?

BY MR. SCHAFER: "Should there be something in the questioning concerning a penalty?"

BY THE COURT: "Yes. I meant to bring that out."

"Mr. Schmid, you understand that the crime of second degree murder carries a penalty of from ten years to life. You understand that?"

BY MR. SCHMID: "Yes, I do."

BY THE COURT: "You understand that you could receive a sentence of up to life imprisonment on this plea of guilty?

BY MR. SCHMID: "Yes."

Judgment affirmed.

STRUCKMEYER, C. J., LOCKWOOD and CAMERON, JJ., and McFARLAND, J., Retired, concur.

NOTE: Vice Chief Justice JACK D. HAYS, announced his disqualification and did not participate in the determination of this matter.