506 P.2d 242

STATE of Arizona, Appellee,

v.

Rockey MOORE, Appellant.

No. 2280.

Supreme Court of Arizona,
In Banc.

Feb. 21, 1973.

Rehearing Denied March 27, 1973.

Gary K. Nelson, Atty. Gen., Phoenix, Albert M. Coury, Former Asst. Atty. Gen., Mesa, William P. Dixon, Asst. Atty. Gen., Phoenix, for appellee.

Edward P. Bolding, Pima County Public Defender, Howard A. Kashman, Former Pima County Public Defender, Eleanor D. Schorr, Deputy Public Defender, Tucson, for appellant.

LOCKWOOD, Justice:

Rockey Moore, hereinafter referred to as the defendant, presents a consolidated appeal, both from the denial of a writ of habeas corpus brought prior to his prosecution on a charge of first degree murder, and from his conviction and sentence of life imprisonment on the murder charge.

The defendant shot and killed Robert Greaber in Pima County on December 25, 1967, after which he immediately fled to California. On December 27th the defendant was charged with murder in violation of A.R.S. § 13–451 to 453 (1956), and a warrant was issued for his arrest. On or about that same day, he was apprehended and incarcerated in California pursuant to a California charge; he was subsequently tried, convicted and began serving his sentence in California.

In January, 1968, Pima County authorities filed a detainer against defendant with

California correction authorities. On May 6, 1968, the defendant wrote to the Tucson Chief of Police asking that he be extradited back to Arizona to stand trial on the murder charge. The letter was forwarded to the Pima County Attorney who responded to defendant on May 23, 1968, informing him that although "it may take some time * * *" the county attorney had "begun steps to secure your presence here for trial." On June 7th, the defendant wrote a letter to the Pima County Attorney asking that he be extradited "as quick as possible." On July 9th the Governor of Arizona, at the request of the Pima County Attorney, transmitted to the Governor of California a formal requisition for the extradition of the defendant. In the letter was a statement the defendant was confined in the California medical facility at Vacaville, California.

On June 11, 1969 the County Attorney wrote the Superintendent of the prison in Deuel Vocational Institution at Tracy, California where defendant then was:

"With reference to your inquiry to the Sheriff of Pima County, we wish to inform you that if Rockey Moore is released we intend to prosecutire [sic] and to please keep our detainer in effect.

"Thank you for your cooperation."

On May 27, 1970 the Superintendent of Deuel Vocational Institution in Tracy, California responded to the extradition request as follows:

"This is to advise you that the above-named subject was received at this institution on May 20, 1970 from the Reception Guidance Center, California Medical Facility, Vacaville, California with a new term.

"On file, we have both Governor's requisition of extradition for subject. We would like to determine if it is your desire to extradite subject now and return him after the trial or take custody at the time of his release.

"Subject is scheduled to appear before the California Adult Authority in September 1970.

"Please be assured of our continued cooperation in matters of mutual concern."

Apparently defendant had been transferred from Vacaville, California to Tracy, California. Three days after receiving the letter, the new Pima County Attorney responded, stating that "it is our desire to extradite subject now * * *."

The defendant was brought to Arizona sometime during the next month, and following a resetting of a preliminary hearing from July 11 to July 20, 1970, defendant was held to answer the charge of murder. Trial began on October 14th, and defendant was convicted and subsequently sentenced on November 5, 1970.

Prior to his trial, defendant filed a Petition for Writ of Habeas Corpus *ad prosequendum,* on the contention that he was denied his right to a speedy trial as guaranteed under the Sixth Amendment to the United States Constitution, and by Article 2 § 24 of the Arizona Constitution, A.R.S. This was denied, and defendant appeals from the judgment and sentence and from the denial of the writ of habeas corpus.

In defining the parameters of the federal constitutional protection, the United States Supreme Court has directly confronted the question of whether the reach of the Sixth Amendment extends to an accused who is prevented from having a speedy trial because he is imprisoned in another state. Dickey v. Florida, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970); Smith v. Hooey, 393 U.S. 374, 89 S.Ct. 575, 21 L. Ed.2d 607 (1969). The latest case which discusses the subject is Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101, handed down on June 22, 1972. It cites *Dickey, supra,* and proceeds to discuss the entire concept of speedy trial.

The *Dickey* case involved a situation where a defendant was tried more than seven years after the occurrence of the robbery of which he was accused. He was serving time in a federal prison in another state and made repeated attempts to secure a speedy trial on the robbery charge unsuccessfully. The United States Supreme

Court in reviewing the case stated that there was sufficient evidence in the record to remand it with instructions to dismiss the charges, nevertheless said:

"Crowded dockets, the lack of judges or lawyers, and other factors no doubt make some delays inevitable. Here, however, no valid reason for the delay existed; it was exclusively for the convenience of the State. On this record the delay *with its consequent prejudice* is intolerable as a matter of fact and impermissible as a matter of law." 398 U. S. at 38, 90 S.Ct. at 1569, 26 L.Ed.2d at 32.

We find no such evidence here of prejudice to the defendant. He was given a preliminary hearing; he subpoenaed witnesses. At the trial it is true one of the witnesses for the prosecution could not be located in spite of diligent efforts, and her testimony, given at the preliminary hearing where defendant had had adequate opportunity to cross-examine her, was available and used.

Therefore, since *Dickey* and *Barker* both require a showing of prejudice in order to reverse, we cannot say that defendant was prejudiced, and his claim of lack of speedy trial is not tenable.

The defendant has also charged errors in his trial and conviction on the charge of first degree murder. We will take up first the question of whether there was sufficient evidence to support a verdict of first degree murder.

According to the undisputed facts brought out at the trial, the chain of events and circumstances leading up to the shooting is as follows: The victim was a big, muscular, husky, man forty-six years of age. During the evening of December 24, 1967, he had been drinking heavily. After making the rounds of various bars, he, his girlfriend Clairann Randolph, and another couple went to the apartment of Lisa Larson, a friend of Clairann's. They arrived at around 1:15 on the morning of December 25th. By this time the victim had become somewhat intoxicated. The

defendant and seven or eight other persons were in the apartment when the victim arrived. None of these people knew the victim or had ever met him previously. The victim's conduct from the time he entered the apartment was violent, belligerent and intimidating; he spoke abusively and within a very short time tried to start a fight with several of the people there.

Shortly after he arrived, the victim for no apparent reason asked one or two of the men in the apartment if they wanted to go outside, presumably to fight. After they declined, the victim approached the defendant with the same question. The defendant, who was nineteen years old and less than average build declined. The victim however persisted. He again asked that he and the defendant go outside. From this point on the prosecution and defense testimony somewhat differs. The defendant went into the kitchen and came out with a gun. He pointed the gun at the victim and said "I am begging you to leave me alone or I will have to shoot you," or "I don't want to shoot". The victim responded by throwing up his arms and saying "go ahead and shoot".

Shortly thereafter, the defendant went out the back of the apartment into the patio, with the victim following him. Clairann Randolph, the victim's girlfriend, followed him outside and attempted to restrain him bodily. She also asked the defendant to go home but he did not respond. The defendant then started walking rapidly away from the apartment, Clairann and the victim following. After they had gone about one and one half blocks, the defendant at times running and at times "trotting", and the victim always chasing behind, the victim again said "go ahead and shoot" and threw up his arms. The defendant thereupon turned around and shot the victim three times, apparently killing him instantly.

After the shooting the defendant fled, first back to the apartment, and then eventually to California. The prosecution presented medical testimony indicating that

the third shot was fired while the victim was already lying on the ground.

■ The Arizona Statutes define murder as " * * * the unlawful killing of a human being with malice aforethought." A.R.S. § 13–451. The defendant claims there was insufficient evidence of malice. However, as the use of a deadly weapon is in itself sufficient evidence for the jury to find malice, State v. Sellers, 106 Ariz. 315, 475 P.2d 722 (1970); State v. Hickson, 104 Ariz. 218, 450 P.2d 408 (1969); State v. Intogna, 101 Ariz. 275, 419 P.2d 59 (1966), appeal after remand, 103 Ariz. 455, 445 P. 2d 431 (1968), we cannot say that the jury finding of malice was without reasonable justification.

■ It is a universal rule that to sustain a conviction of first degree murder, all the elements must be proven beyond a reasonable doubt: intent to kill, malice, deliberation and premeditation. Moore v. State, 65 Ariz. 70, 76, 174 P.2d 282, 286 (1946). Where there is substantial evidence from which reasonable persons could find all of the elements of guilt, the jury findings based on that evidence should not be disturbed. State v. Johns, 105 Ariz. 123, 460 P.2d 177 (1969).

■ In order to show deliberation and premeditation, we have said that " * * * it must be shown that a plan to murder was formed after the matter had been made a subject of deliberation and reflection * * *. [But] there need be no appreciable space of time between the intention of killing and the act of killing. They may be as instantaneous or successive thoughts of the mind." Macias v. State, 36 Ariz. 140, 149–150, 283 P. 711, 715 (1929). But the state does have the burden of showing sufficient evidence to establish not only that the defendant had the opportunity to truly reflect on his actions, but also that this opportunity was so consistently related to the killing itself that it could reasonably infer beyond a reasonable doubt that the killing was in fact premeditated and deliberate.

In the instant case, the State contends that the acts of the defendant in getting a gun, pointing it at the victim and threatening to shoot him is clearly sufficient evidence with which to find premeditation and deliberation. If the defendant had then and there shot the victim, we would certainly agree with the State. But the defendant did not follow through on his threat. In fact, he turned and went away, in spite of the fact that the victim persisted in taunting him. The killing occurred only after the defendant had left and been chased by the victim for one and one half blocks.

■ The evidence most favorable to upholding the jury's verdict shows that the defendant, a nineteen year old boy, was being chased down a dark street in the middle of the night by an intoxicated man with a belligerent temperament, who was twice the defendant's age and figuratively twice his size. The defendant had a gun, and on the victim's demand that "you shoot me", finally did so. The use of the gun, under such circumstances is sufficient to supply the element of intent to kill. The last shot being fired while the victim was on the ground was sufficient for the jury to find premeditation.

■ The defendant next claims that it was error to read into evidence the preliminary hearing testimony of Clairann Randolph, as she was not present during the trial. It is argued that the defendant's opportunity to confront and cross-examine the witness at the preliminary hearing was diluted because of critical evidence which was not uncovered until after the preliminary hearing which could have been used to impeach the witness. We are satisfied it neither violates the confrontation clause of the Arizona Constitution, art. 2, § 24, nor the Sixth Amendment to the Federal Constitution, as long as the defendant has had an opportunity to cross-examine the witness and there was " * * * a sufficient good faith showing * * * that the witness[es] had been subpoenaed and

**116**

[was] not available for the trial * * *." State v. Dixon, 107 Ariz. 415, 419, 489 P. 2d 225, 229 (1971); See also, Barber v. Page, 390 U.S. 719, 88 S.Ct. 1318, 20 L. Ed.2d 255 (1968).

In the instant case, the state made several attempts to find the witness. This included contacting her husband's employer, checking records of the utility company serving her home, contacting the post office regarding a forwarding address, and calling prospective employers in another state. The trial court was satisfied that the state had made a good-faith effort to find the witness, that the witness was beyond the jurisdiction of the state, and that she was unavailable for trial.

The defendant next claims error in the failure of the trial court to give jury instructions on manslaughter as a lesser included offense.

■ Manslaughter is defined by statute as the unlawful killing of a human being without malice. A.R.S. § 13–455 (1956). It is of two kinds, (1) voluntary, upon a sudden quarrel or heat of passion and (2) involuntary, in commission of an unlawful act which might produce death in an unlawful manner, or without due caution under the circumstances.

As the defendant has admitted and it is undisputed that he intended to shoot the victim, an instruction on involuntary manslaughter as a lesser included offense would have been improper, and the trial court was correct in denying such an instruction. State v. Brady, 105 Ariz. 190, 461 P.2d 488 (1969).

However, the theory of defense pursued by the defendant in the course of the trial was that the killing was in self-defense. In attempting to prove self-defense, the defense presented evidence indicating that the defendant was both terrified and highly excited at the time of the shooting.

■ While the jury could have disregarded the defendant's theory that the decedent had attacked him with a knife, the evidence presented could have overcome the presumption of malice established by the state and might have convinced the jury that the killing was committed in the heat of passion. State v. Ramos, 108 Ariz. 36, 38, 492 P.2d 697, 699 (1972). In the instant case, the trial court erred in not giving an instruction on voluntary manslaughter.

The defendant also complains that the trial court erred in not granting a change of venue. The defendant was allegedly involved in a jail riot and escape which occurred a few weeks prior to the trial. There was extensive press coverage and the defendant was named in the press as a leader of the riot. The defendant argues that since most of the jurors had read or heard about the defendant and this attempted escape, it is not possible to know with certainty what effect this pretrial publicity had on the jurors in reaching the verdict. Therefore, the defendant claims he should have been granted either a change in venue or a continuance. This argument is entirely without merit.

■ A motion for a change of venue or a continuance is not granted as a matter of right; these are matters solely within the sound discretion of the trial judge. A trial judge's ruling on such a motion will therefore not be disturbed unless a clear abuse of discretion appears and is shown to be prejudicial to the defendant. State v. Schmid, 107 Ariz. 191, 484 P.2d 187 (1971); State v. Narten, 99 Ariz. 116, 407 P.2d 81 (1965), cert. denied, 384 U.S. 1008, 86 S.Ct. 1985, 16 L.Ed.2d 1021 (1966).

■ In the instant case, in order to insure an unbiased jury, the trial judge carefully conducted an individual voir dire examination of each juror, and questioned them on their ability to act impartially regardless of what they might have seen in the press. In addition, the defense attorney specifically asked each juror whether they had formed an opinion based on any pretrial publicity they might have seen or heard.

As the trial court acted conscientiously to provide a fair and impartial trial, and as no factual circumstances have been alleged

which would have presumptively prejudiced the jury's verdict, see State v. Schmid, supra, 107 Ariz. at 194, 484 P.2d at 190, there is no basis to defendant's claim of error.

Defendant urges that it was error to admit evidence of his attempted escape from jail while awaiting trial. It is argued that as the defendant had not completed serving his California sentence at the time of his escape, it was prejudicial to admit this evidence to show consciousness of guilt of the murder charge.

In the instant case, the defendant had already given testimony before the jury on his other convictions. He therefore could have explained without prejudice, that he was trying to escape from an unfinished sentence on this other conviction and not from the murder charge, as the defendant had the opportunity to rebut the inference raised by the evidence of escape. The admission of such evidence could not have been prejudicial. See State v. Tafoya, 104 Ariz. 424, 454 P.2d 569 (1969).

Reversed and remanded with instructions for a new trial.

HAYS, C. J., CAMERON, V. C. J., and STRUCKMEYER, and HOLOHAN, JJ., concur.